Robert WRIGHT, Sr., Individually and as Administrator of the Estate of Robert Wright, Jr. and for the benefit of his next of kin; and Ruby Wright, Individually, Plaintiffs–Appellees,

v.

Lamar WHIDDON, Individually and as Sheriff of Turner County; Turner County, Georgia; City of Ashburn, Georgia; Defendants,

Scotty Ireland, Individually and as a Police Officer of the City of Ashburn, Defendant–Appellant.

No. 90–8863.

United States Court of Appeals,
Eleventh Circuit.

Jan. 14, 1992.

O. Hale Almand, Jr., Sell & Melton, Alan H. Rumph, Smith Hawkins Almand & Hollingsworth, Macon, Ga., for defendant-appellant.

Larry B. Mims, Tifton, Ga., Willie Abrams, Baltimore, Md., for plaintiffs-appellees.

Before COX, Circuit Judge, GODBOLD and JOHNSON *, Senior Circuit Judges.

COX, Circuit Judge:

Scotty Ireland, a police officer for the City of Ashburn, Georgia, appeals the district court's denial of a motion for summary judgment on the grounds of qualified immunity in a 42 U.S.C. § 1983 lawsuit brought by the parents of Robert Wright, Jr. The suit arises out of the fatal shooting of Wright as he was attempting to escape from custody.

### Facts

The facts in this case are essentially undisputed. In September 1985 Robert Wright, Jr. was in the custody of Lamar Whiddon, the Sheriff of Turner County, Georgia, on a charge of armed robbery. He had confessed to the crime. Because Wright was on probation, a sheriff's deputy took him to the county courthouse in Ashburn for a probation revocation hearing. The deputy did not use handcuffs or shackles on Wright and delivered him with-

out incident. Shortly after bringing Wright to the proper courtroom, the deputy was called away to investigate a reported armed robbery. The deputy left Wright in Whiddon's custody. Whiddon left the courtroom and went into the judge's chambers to inform the judge of the situation, instructing a seventy-one-year-old unarmed bailiff to watch Wright. Wright walked from the courtroom, then ran from the courthouse.

Someone yelled that Wright was escaping, and Whiddon ran from the judge's chambers accompanied by Ireland, who had been in the judge's chambers waiting to testify in the revocation hearing. They chased Wright down a stairway to the street, but by the time they reached the sidewalk in front of the courthouse Wright was across the street and running down an alley. Because it appeared that Wright would elude immediate capture, as Whiddon shouted "Shoot him! Shoot!," Ireland raised his gun and fired one shot at Wright, fatally wounding him. Wright died shortly afterward in an ambulance. The parties agree that Wright was unarmed and that Whiddon and Ireland had no reason to believe otherwise.

Ireland knew Wright from previous experience with him. Ireland knew that Wright had a reputation as a "runner," a person who habitually tries to escape from custody. Ireland had also arrested Wright at least three times without drawing his weapon. Only an hour or so after the armed robbery for which Wright was being held, Ireland and other officers had approached a car in which they believed Wright was sitting. They could not see into the car because of its dark window tint. After the driver of the car verified that Wright was in the car, the officers opened the rear doors, asked Wright to get out, and arrested him for armed robbery. Wright offered no resistance, and no officer drew his weapon. On two previous occasions, once alone, Ireland had arrested Wright for crimes involving the theft of a gun. On neither occasion did Ireland draw his gun or Wright offer any resistance.

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

On motion for summary judgment by the defendants, the district court granted summary judgment for several defendants, but denied summary judgment to Ireland and the City of Ashburn. 747 F.Supp. 694. (The court's decisions granting summary judgment and denying it to the city are not before us on this appeal.)

## Discussion

■ We have jurisdiction under the collateral order doctrine of an appeal of a denial of a motion for summary judgment on the grounds of qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 527–28, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411; *Andreu v. Sapp*, 919 F.2d 637, 639 (11th Cir.1990); *see also McDaniel v. Woodard*, 886 F.2d 311, 313 (11th Cir.1989).[1] On such an appeal, "we assume the facts to be as the plaintiff states them and then determine the purely legal issue of whether those facts show a violation of clearly established rights of which a reasonable official in defendant's circumstances would have known." *Woodard*, 886 F.2d at 313.

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court announced an objective test for when government officials are entitled to qualified immunity. The court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[2] *Id.* at 818, 102 S.Ct. at 2738.

■ Thus the law of qualified immunity requires that in order to hold a public official civilly liable for discretionary actions taken during the course of the official's duties, a court must find that the official violated a "clearly established" legal right. In *Anderson v. Creighton*, 483 U.S. 635,

107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court provided further guidance on what it means for a legal right to be clearly established. In order for a right to be clearly established and defeat an official's claim to qualified immunity,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039.

■ "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). Our task of identification is made simple in this case, because "[a]t the Pretrial Conference plaintiffs informed the Court and the defendants that they would proceed on the Fourth Amendment alone as to the deadly force issue." R. 3–64–9 (Plaintiff's Brief in Opposition to Defendants Scotty Ireland's and Lamar Whiddon's Motions for Summary Judgment at 9). Wright's parents' claim in this suit is therefore that Ireland's use of deadly force to apprehend Wright violated Wright's Fourth Amendment right against unreasonable searches and seizures.

Wright's parents point us to *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), decided six months before the incident here, which held that the use of deadly force to apprehend a fleeing, nondangerous felony suspect is a constitutionally unreasonable seizure under the

---

1. There is some conflict in our precedent whether we have jurisdiction over the denial of a qualified immunity summary judgment motion if the motion is denied because of a factual dispute. *See Howell v. Evans*, 922 F.2d 712, 716–18 (11th Cir.1991) (discussing conflicting circuit precedent); *Bennett v. Parker*, 898 F.2d 1530, 1534–37 (11th Cir.1990) (Tjoflat, C.J., concurring) (same). We conclude that there is no dispute in this case about the underlying historical facts.

2. Wright's parents do not dispute that Ireland is a "government official" or that his decision to attempt to capture Wright with deadly force was a "discretionary function."

Fourth Amendment. *Id.* at 11, 105 S.Ct. at 1701. Wright's parents contend that *Garner* clearly established the right of a non-dangerous suspect to be free of the use of deadly force to effect his capture, and that Ireland is therefore not entitled to qualified immunity.

We do not agree. As Ireland argues, *Garner* involved a person who had not yet been taken into official custody fleeing to *avoid* custody, while this case involves a person who had been captured, arrested, and detained awaiting trial, who then sought to *escape* custody. The Supreme Court has indicated that this may be a constitutionally significant distinction:

> Our cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today. It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.

*Graham,* 109 S.Ct. at 1871 n. 10.

The Supreme Court has therefore expressly noted that the question whether a pretrial detainee—such as Wright—may press a claim of excessive force under the Fourth Amendment remains open. The parties cite no Eleventh Circuit case that considers the question, nor has our research located one. The question remains open in other circuits as well. *See, e.g., Hammer v. Gross,* 932 F.2d 842, 845 n. 1 (9th Cir.1991) ("it may be questioned whether the Fourth Amendment still controls when the seizure or arrest ripens into detention"); *United States v. Cobb,* 905 F.2d 784, 788 n. 7 (4th Cir.1990) ("The Supreme Court left unresolved in *Graham* whether and to what extent the protections of the Fourth Amendment may extend to pretrial detainees. There is no need for us to reach this difficult question") (citation omitted); *Wisniewski v. Kennard,* 901 F.2d 1276, 1277 (5th Cir.1990) (failing to reach "difficult issue[ ]" of "whether liability should be measured ... by the stan-

dards of the fourth amendment or substantive due process" in case charging excessive force used after apprehending an escaped prisoner).

Were the Supreme Court to decide the issue, it might decide that once a pretrial detainee begins to attempt escape, the detainee is analogous to a fleeing suspect and thus is protected by the Fourth Amendment. However, even if it applied a Fourth Amendment analysis, the Court might conclude that the detainee's capture and subsequent escape attempt alters the Fourth Amendment balance between the "nature and quality of the intrusion on the individual's Fourth Amendment interests [and] the importance of the governmental interests alleged to justify the intrusion," *id.* 471 U.S. at 8, 105 S.Ct. at 1699 (internal quotation marks and citation omitted), so that the *Garner* test is not appropriate. Conversely, the Court might hold that once a suspect becomes a pretrial detainee the appropriate analysis is under the Due Process Clause, *see Graham,* 109 S.Ct. at 1871 n. 10, and that a subsequent escape attempt by the detainee does not alter that analysis.

Which of these alternatives, if any, the Supreme Court, or this circuit, would choose if faced with the question is not important. The presence of such doubt about the existence and content of the constitutional right that Ireland is alleged to have violated is enough to entitle him to qualified immunity. To use the language of *Anderson,* the "contours of the [Fourth Amendment] right" asserted here by Wright's parents were not "sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. The legal right that Wright's parents seek to assert on his behalf—the right to press a claim of excessive force under the Fourth Amendment, asserted by a pretrial detainee against whom deadly force is used while he is attempting to escape—was not clearly established in September 1985. As a result, Ireland is entitled as a matter of law to summary judgment on the ground of qualified immunity. Wright's parents' suit against Ireland must therefore be dis-

missed. *See Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815.

Our decision today does not mean that the police can shoot fleeing pretrial detainees with impunity. At a minimum, "[i]t is clear ... that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham,* 109 S.Ct. at 1871 n. 10. Wright's parents do not make a due process claim, so we need not address that issue.

### Conclusion

The district court erred by failing to find that the Fourth Amendment right asserted by Wright's parents was not clearly established in September 1985. Because it was not, Ireland is entitled to summary judgment on the ground of qualified immunity. The district court's denial of summary judgment in favor of Ireland was therefore error, and we reverse and remand with instructions to enter summary judgment for Ireland.

REVERSED and REMANDED.