United States Court of Appeals,

Eleventh Circuit.

No. 95-6123.

Walter McMILLIAN, Plaintiff-Appellee,

v.

W.E. JOHNSON, Tommy Herring, Tom Allen, in their individual capacities, et al., Defendants,

Thomas Tate, Simon Benson, Larry Ikner, in their individual capacities, Defendants-Appellants,

Association of County Commissioners of Alabama Liability Self Insurance Fund, Intervenor-Defendant.

Dec. 3, 1996.

Appeals from the United States District Court for the Middle District of Alabama. (No. CV-93-A-6990N), W. Harold Albritton, III, Judge.

*ON PETITION FOR PANEL REHEARING AND SUGGESTION OF REHEARING EN BANC*

Before COX and BARKETT, Circuit Judges, and PROPST[*], Senior District Judge.

PER CURIAM:

The opinion reported at 88 F.3d 1554 (11th Cir.1996), is amended by substituting the following for section "F", under part IV of the opinion, pages 1571-73.

IV. Discussion

F. Tate's Sovereign Immunity From State Law Claims

The district court found that McMillian had presented sufficient evidence to create a genuine issue of material fact on three state law claims against Tate, Ikner, and Benson: malicious prosecution (Count Twenty); abuse of process (Count Twenty-One);

---

[*]Honorable Robert B. Propst, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

and outrage (Count Twenty-Six). In addition, the court found that a genuine issue exists as to a state law outrage claim against Tate and the DOC defendants (Count Twenty-Five). The court rejected Tate's state law sovereign immunity and state law discretionary immunity defenses, holding that neither form of state law immunity shields officials sued for intentional or malicious wrongdoing in their individual capacities.

On appeal,[1] Tate contends that Alabama sheriffs are protected by sovereign immunity under § 14 of the Alabama Constitution, even when they are sued in their individual capacities for malicious or intentional wrongdoing. According to Tate, a suit may be maintained against a sheriff only if it falls within one of five limited categories.[2] It is undisputed that McMillian's claims do not fall within any of the five categories.

We find in decisions by Alabama's appellate courts no clear answer to the question presented. Some Alabama decisions, including the most recent ones, seem to support Tate's position. *Karrick v. Johnson,* 659 So.2d 77 (Ala.1995)(deputy sheriff immune

---

[1]We have jurisdiction over this appeal from the district court's denial of state law immunity because the state law immunity asserted is an immunity against suit. *See Griesel v. Hamlin,* 963 F.2d 338, 340-41 (11th Cir.1992).

[2]Quoting *Parker v. Amerson,* 519 So.2d 442, 442-43 (Ala.1987), Tate argues that a sheriff is immune from suit under Article I, § 14, Alabama Constitution of 1901, in the execution of the duties of his office, except for actions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

from suit for malicious prosecution and false imprisonment); *Drain v. Odom,* 631 So.2d 971 (Ala.1994)(sheriff is immune from suit in his official capacity for negligent performance of his statutory duties); *Parker v. Amerson,* 519 So.2d 442 (Ala.1987)(sheriff is an executive officer of State of Alabama and is immune from suit under Article I, § 14, Alabama Constitution of 1901, in the execution of duties of his office); *Alexander v. Hatfield,* 652 So.2d 1142 (Ala.1994)(deputy sheriffs are immune from suit to the same extent as sheriffs). Some Alabama decisions point in the other direction. *Phillips v. Thomas,* 555 So.2d 81 (Ala.1989)(Clearly, a state officer or employee is not protected by § 14 when he acts willfully, maliciously, illegally, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of law); *Unzicker v. State,* 346 So.2d 931 (Ala.1977)(State immune when impleaded as defendant, but governor, commissioner of conservation, and state highway director, in their respective capacities, were not also immune where it was alleged that those officers acted fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law); *Milton v. Espey,* 356 So.2d 1201 (Ala.1978)(Section 14 does not necessarily immunize State officers or agents from individual civil liability); *DeStafney v. University of Alabama,* 413 So.2d 391 (Ala.1982)(defense of sovereign immunity afforded university and its president did not extend to employee whose alleged tortious act was the basis of the claim); *Lumpkin v. Cofield,* 536 So.2d 62 (Ala.1988)(defense of sovereign immunity does not bar suits against state officers and employees for torts committed willfully, maliciously, and outside

the scope of their authority); *See also Gill v. Sewell,* 356 So.2d 1196 (Ala.1978).

But a recent decision by this court, *Tinney v. Shores,* 77 F.3d 378 (11th Cir.1996), holds that under Alabama law a sheriff and deputy sheriff are shielded by sovereign immunity against claims based upon intentional torts. Some of the language in *Tinney* is confusing; the court says that "[u]nder Alabama law, sheriffs and deputy sheriffs, in their official capacities and individually, are absolutely immune from suit when the action is, in effect, one against the state." *Id.* at 383. The claim under consideration in *Tinney* was against the sheriff and deputy sheriff in their individual capacities. However, no consideration was given to whether the action was, in effect, one against the state. Federal law controls a determination relative to whether a state is the real party-in-interest to the action, and under federal law the claim in *Tinney* was not one against the state. *See Kentucky v. Graham,* 473 U.S. 159, 167-68, 105 S.Ct. 3099, 3106-07, 87 L.Ed.2d 114 (1985); *and Jackson v. Georgia Dep't of Transp.,* 16 F.3d 1573, 1577 (11th Cir.1994). Notwithstanding this confusing language in *Tinney,* the holding of the case is clear: under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity. We are bound to follow *Tinney,* and do so. We hold that the district court erred in rejecting Tate's sovereign immunity defense to the state law claims.

The petition for panel rehearing is, except as granted hereby, DENIED, and no member of this panel nor other judge in regular

active service on the court having requested that the court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestion of Rehearing En Banc is DENIED.

PROPST, Senior District Judge, specially concurring:

I join the court's opinion on petition for rehearing. I write separately to address broader issues relating to qualified immunity.

At a recent Eleventh Circuit Judges' Workshop, a speaker remarked that "Keeping up with qualified immunity law is a full-time job." As a trial judge, I can well see how one might reach that conclusion. I concur in the denial of rehearing as to federal qualified immunity asserted by the defendants in their individual capacities. In doing so, I humbly make some suggestions which may reduce the workload of the followers of this still developing law. Although I, as a trial judge, granted qualified immunity to the two individual defendants in *Jenkins v. Talladega City Board of Education,* 95 F.3d 1036 (11th Cir.1996), and later concurred in the denial of qualified immunity in this case, I submit that there is no inconsistency.[1]

Our holding in this case is premised on the holding in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). *Bell* clearly holds that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance

---

[1]Ironically, the majority in *Jenkins* partially relied upon this case in arriving at its holding. That opinion has now been vacated because of the granting of an *en banc* rehearing by the court.

with due process of law." *Id.,* 441 U.S. at 535, 99 S.Ct. at 1872. Having held that *punishment* of pretrial detainees violates the Due Process Clause, the Court proceeded to determine what factors are considered in determining whether conduct constitutes "punishment."

The Court, after stating that factors identified in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168-69, 83 S.Ct. 554, 567-68, 9 L.Ed.2d 644 (1963), "[provide] useful guideposts in determining whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word," concluded that, "A court must decide whether the disability is imposed for the *purpose* of punishment or whether it is but an incident of some other legitimate governmental purpose.... Absent a showing of an expressed *intent to punish* on the part of detention facility officials, that determination will generally turn "on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative *purpose* assigned [to it].' *Kennedy v. Mendoza-Martinez, supra,* at 168-69, 83 S.Ct. at 567-68 ...." (emphasis added). *Id.,* 441 U.S. at 538, 99 S.Ct. at 1874. The Court added,

> Thus, if a particular condition or restriction is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court may *infer* that the *purpose* of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees (emphasis added).

*Id.,* 441 U.S. at 539, 99 S.Ct. at 1874.

Whether discussed in the context of "expressed intent" to punish, or in the context of determining the existence of a

legitimate governmental goal, the *purpose* of the conduct is significant, and the purpose may be inferred from the total evidence. Both purpose and intent are fact related and it is difficult for me to see how such issues can be determined as a matter of law; particularly when the claim is that it was necessary to place a pretrial detainee on death row in order to protect him. Such is the issue in this case.[2]

On the other hand, *Jenkins, supra,* is not a case involving the Due Process Clause nor the subjective intent or purpose of the alleged violators. The *Jenkins* claims are Fourth Amendment claims which are properly analyzed under the Fourth Amendment's "objective reasonableness" standard rather than under a subjective due process standard. *See Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). While the *Bell* Due Process Clause analysis requires, as an essential element, proof of expressed intent or at least circumstantial evidence of an unlawful purpose, the Fourth Amendment analysis does not require any inquiry into subjective state of mind or purpose. *Graham, supra,* 490 U.S. at 398, 109 S.Ct. at 1873.

Having noted this distinction, I further suggest that the holding in *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1150 (11th Cir.1994) (en banc), that "Courts must not permit plaintiffs to discharge their burden by referring to general rules and to the

---

[2]In this case, the underlying issue is intentional or purposeful punishment, *vel non.* The means of punishment, if it occurred, would appear to be incidental. While perhaps not raised by the plaintiff as a Fifth Amendment claim, one could argue that the purpose of the death row placement was to induce a confession. I will leave it to others to determine if a Fifth Amendment inquiry is purely objective.

violation of "abstract rights,' " is more easily applied in cases, such as Fourth Amendment cases, where the underlying inquiry is one of objective reasonableness. I thus distinguish the facts and issues of this case from those in *Jenkins.* In *Jenkins* the issue is whether reasonable officials would know that their conduct was objectively unreasonable.[3] Such inquiries require more than an abstract consideration of Fourth Amendment law. If the inquiry in *Jenkins* had involved an element of intent or purpose, the intent or purpose, not the specific conduct, may have been the appropriate issue to focus upon if the inappropriateness of such intent or purpose had been clearly established. The *Jenkins* majority relied upon a Supreme Court case which states that searches must be reasonable under the circumstances.[4] This is little more direction

---

[3]See *Foy v. Holston,* 94 F.3d 1528 where the Court stated:

> To prevail on a claim about family privacy, parents need to prove that a state actor interfered with a protected liberty interest without sufficient justification. This constitutional tort requires no element of intent.... Violations of the right to family association are determined by a balancing of competing interests ... so, state officials who act to investigate or to protect children where there are allegations of abuse almost never act within the contours of "clearly established law."

The *Jenkins* majority would apparently require the defendants, in the acknowledged absence of clearly established Eleventh Circuit law, to, by inductive consideration of a factually distinct Supreme Court case and one Associate Justice's dicta, decide what the Eleventh Circuit would likely hold.

[4]"[w]hether there was a reasonable relationship between the scope of the search (the measures adopted and the objectives of the search").

than the insight that the Fourth Amendment itself provides.[5] Apparently, the *Jenkins* majority would hold that public officials must determine whether a controlling appellate court will determine that certain conduct is egregious enough to qualify as being unreasonable even though none has specifically so held.

Perhaps no case provides a better example of the requirement of prior concrete law in Fourth Amendment cases that does *Wright v. Whiddon,* 951 F.2d 297 (11th Cir.1992). *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) clearly established that the use of deadly force to apprehend a fleeing, non-dangerous felony suspect is a constitutionally unreasonable seizure under the Fourth Amendment.[6] *Garner* was decided six months before the incident in *Wright.* In *Wright,* a person who had been arrested on a charge of armed robbery and had confessed to the crime ran from a courthouse while awaiting a probation revocation hearing. The escapee was admittedly unarmed, but was fatally wounded as he ran down an alley. The court held that *Garner* did not clearly establish that deadly force cannot be used against a fleeing, previously arrested, non-dangerous felon. Thus, the police officer who shot the fleeing felon was entitled to qualified immunity.[7]

Since this case, unlike *Jenkins* and *Wright,* implicates

---

[5] "The right of the people to be secure in their persons ... against unreasonable search and seizures...."

[6] See also *Acoff v. Abston,* 762 F.2d 1543 (11th Cir.1985).

[7] Of interest as it relates to the facts of this case is the following dictum in *Wright:* "At a minimum, "[i]t is clear ... that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.' *Graham,* 109 S.Ct. at 1871 n. 10." This dictum clearly distinguishes the appropriate analysis here from that in *Jenkins.*

subjective intent or motive, the issue remains as to how such intent claims are to be considered during the course of a qualified immunity analysis. In *Ratliff v. DeKalb County, Ga.,* 62 F.3d 338, 341 (11th Cir.1995), the court stated, "We are bound by our earlier holding that, in qualified immunity cases, intent is a relevant inquiry if discriminatory intent is a specific element of the constitutional tort; and, we follow that rule here." Compare, however, *Hansen v. Soldenwagner,* 19 F.3d 573, 578 (11th Cir.1994)("For qualified immunity purposes, the subjective motivation of the defendant official is immaterial ... *Harlow* 's objective standard would be rendered meaningless if a plaintiff could overcome a summary judgment motion based on qualified immunity by injecting the defendant's state of mind into the pleadings.")[8]

In the recent case of *Foy v. Holston,* cited *supra,* the court attempted to strike a balance in cases in which intent is an element of the underlying claim. The court in *Foy* stated,

> One trigger to the doctrine's application depends upon whether the record establishes that the defendant, in fact, did possess a substantial lawful motive for acting as he did act. At least when an adequate lawful motive is present, that a discriminatory motive might also exist does not sweep qualified immunity from the field even at the summary judgment stage. Unless it, as a legal matter, is plain under the specific facts and circumstances of the case that the defendant's conduct—despite his having adequate lawful reasons to support the act—was the result of his unlawful motive, the defendant is entitled to immunity. Where the facts assumed

---

[8]This holding was made in even a First Amendment case where an element of the *Mt. Healthy* analysis includes a determination of whether the defendant's conduct was substantially motivated by a consideration of the plaintiff's protected speech. See *Mt. Healthy v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Compare *Hansen's* holding to that in *Fikes v. City of Daphne,* 79 F.3d 1079 (11th Cir.1996).

for summary judgment purposes in a case involving qualified immunity show mixed motives (lawful and unlawful motivations) and pre-existing law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity.

In note 9, the court added:

We know that matters of intent are often jury questions. But, even at summary judgment, "where the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff the [ ] court may properly acknowledge that fact...." *Young v. General Foods Corp.,* 840 F.2d 825, 830 (11th Cir.1988)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 597 (11th Cir.1987))....
Here the record, in fact, shows substantial lawful intent, while not ruling out some unlawful intent, too. Unlike *McMillian* and *Ratliff* (which involved pointed district court fact findings—that we did not review—about the intent of the defendants and in which the *Mt. Healthy* doctrine was not discussed), we are deciding the qualified immunity question based on circumstances which include indisputable and sufficient lawful motivations on the part of Defendants.

*Crawford-El v. Britton,* 93 F.3d 813 (D.C.Cir.1996) (en banc), proposes another solution, in cases involving the intent or motive of public officials, to preserving the holding in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) that requires some protection to such officials from the costs of lawsuits that unduly chill their exercise of discretion in the performance of their public duties. The apparent majority of the court held that when motive or intent is an essential element of a constitutional tort claim, the plaintiff, in opposition to a motion for summary judgment based on qualified immunity, has to present *clear and convincing evidence* that the defendant acted with an unconstitutional motive. The court split with regard to the amount of discovery to be allowed to plaintiffs on the intent or motive issue before the trial court rules on such motions. While the number of concurring opinions makes it difficult to ascertain the

holdings of the court, at least one commentator has stated that while Judge Williams' "opinion for the court" adopted the clear and convincing standard, Judge Ginsburg's opinion prevailed as to the amount of discovery allowed. Judge Ginsburg wrote that "a plaintiff [should be allowed] to pursue limited discovery only upon a showing that he has a reasonable likelihood of turning up evidence that a jury could consider clear and convincing proof of the defendant's unconstitutional motive...." It appears that Judge Silberman apparently stood alone in his view that there should be only an objective inquiry into the pretext of an asserted legitimate motive. Judge Silberman would apparently hold that if a defendant articulates any reasonable motive for his actions, he is entitled to summary judgment unless a jury might find that such a suggested motive, whether true or false, would be unreasonable. Apparently a jury would not be allowed to determine the true motive. Judge Silberman's view is close to the holding in *Foy.*

In note 5 of *Foy,* the court remarked on the difference between constitutional torts which require proof of intent or motive and those that don't. The court stated:

> But, many constitutional torts do not require the plaintiff to prove that the defendant possessed discriminatory intent in acting. For qualified immunity in such cases, no court doubts that Harlow's test of objective reasonableness applies: The subjective intent of the government actor is unimportant to the resolution of the qualified immunity issue. The sole question is whether any reasonable official (regardless of subjective motive) could have acted as the defendant acted without violating clearly established law.

*Jenkins* involves the type case discussed in note 5 in *Foy.* Our instant case does implicate the subjective intent of the defendant. An issue is whether claims involving subjective intent are

appropriate for summary judgment based upon qualified immunity if a legitimate motive is simply posited.  I find it difficult to see how such cases can be determined at the summary judgment stage if there is any substantial evidence of an illegal motive in view of the established law which precludes a trial court's making credibility determinations, weighing the evidence, and interfering with a jury's drawing of legitimate inferences from the evidence. See *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir.1992).

I fully agree with the concerns expressed by various judges about the exponential growth of such claims against public officials.[9]  I am simply concerned that the rules be "clearly established" so that neither parties nor trial courts will have to continue to play panel roulette and can avoid unnecessary and costly appeals.  For an indication of the difficulty facing trial courts, compare the holding in *Foy, supra,* with that in *Ratliff, supra,* and the vacated *Jenkins* majority opinion with the opinion in *Wright.*  Also consider the above quoted statement in *Hansen.*  While our holding in this case appears to be consistent with that in *Ratliff,* it may be somewhat inconsistent with that in *Foy,* although *Foy* purports to distinguish our holding.

I suggest that the qualified immunity issues cry out for further en banc consideration, especially as to the claims involving intent or motive as an element *vis a vis* those which do not.[10]

---

[9]See Judge Silberman's opinion in *Crawford-El, supra,* for a historical and statistical analysis.

[10]*Crawford-El, supra,* recognizes that trial courts are caught in a "vortex of changing standards."