WILKINSON, Chief Judge,
with whom Judges WIDENER, WILKINS, NIEMEYER, WILLIAMS, and TRAXLER join, concurring in the judgment:
We concur in the court’s judgment dismissing this case against North Carolina police officers Delma Collins and James Shingleton. Plaintiff Lesly Jean contends that Officers Collins and Shingleton violated his Fourteenth Amendment due process rights by failing to turn over exculpatory evidence to the prosecutor. Because plaintiff alleges at most a negligent mis-communication between these officers and the prosecutor, we would conclude that the officers have not deprived Jean of any Fourteenth Amendment right. As a result, we do not believe there can be any § 1983 liability. For the facts of this case we would rely on our earlier en banc opinion. See Jean v. Collins, 155 F.3d 701, 703-05 (4th Cir.1998) (en bane). In that case, we held that as of “1982, a reasonable police officer would not have known that his failure to turn over such evidence violated a criminal defendant’s clearly established constitutional rights.” Id. at 708. The Supreme Court then granted certiora-ri, vacated the judgment, and remanded to this court for further consideration in light of Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). See Jean v. Collins, 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999). It is in light of Wilson then that we address the question of when police officers are liable under § 1983 for allegedly withholding exculpatory evidence from the prosecution and by extension a criminal defendant.
I.
Wilson’s directions are straightforward ones. “A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all....’” Wilson, 526 U.S. at 609, 119 S.Ct. 1692 (quoting Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d *659 399 (1999)); accord Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). We must initially ask, therefore, if Jean has alleged a Fourteenth Amendment due process violation by Officers Collins and Shingleton.[1] Deciding this issue first can save a defendant from having “to engage in expensive and time consuming preparation to defend the suit on its merits.” Siegert, 500 U.S. at 232, 111 S.Ct. 1789. It “also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public.” Wilson, 526 U.S. at 609, 119 S.Ct. 1692 (citing County of Sacramento v. Lewis, 523 U.S. 833, 841-42 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).
In Jean v. Rice, 945 F.2d 82 (4th Cir.1991), we held that Jean’s due process rights had been violated. Specifically, we noted that “the government’s failure [to turn over material impeachment evidence to the defense] was a violation of the principles announced in Brady and its progeny.” Id. at 87. As a result of the prosecutor’s Brady violation, Jean’s request for a writ of habeas corpus was granted. See id. The question before us now is whether there was an additional constitutional violation in this case — a due process violation by Officers Collins and Shingleton for withholding from the prosecutor the hypnosis recordings and reports.
The Supreme Court decisions establishing the Brady duty on the part of prosecutors do not address whether a police officer independently violates the Constitution by withholding from the prosecutor evidence acquired during the course of an investigation. See, e.g., Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Recent cases, including some from this circuit, have pointed toward such a duty. This court has noted that, “[a] police officer who withholds exculpatory information from the prosecutor can be liable under ... section 1983,” Goodwin v. Metts, 885 F.2d 157, 162 (4th Cir.1989), but only where “the officer’s failure to disclose the exculpatory information deprived the § 1983 plaintiffs of their right to a fair trial,” Taylor v. Waters, 81 F.3d 429, 436 n. 5 (4th Cir.1996). And in Carter v. Burch, the court noted that a police officer’s actions in fading to turn over materially exculpatory evidence to a prosecutor “violate[d] [the § 1983 plaintiffs] constitutional rights.” 34 F.3d 257, 264 (4th Cir.1994). Other circuits have also suggested that there may be a duty here. See Brady v. Dill, 187 F.3d 104, 114 (1st Cir.1999); Walker v. City of New York, 974 F.2d 293, 298-99 (2d Cir.1992); Geter v. Fortenberry, 849 F.2d 1550, 1559 (5th Cir.1988); Sanders v. English, 950 F.2d 1152, 1162 (5th Cir.1992); Jones v. City of Chicago, 856 F.2d 985, 993-96 (7th Cir.1988); McMillian v. Johnson, 88 F.3d 1554, 1566-70 (11th Cir.), amended by 101 F.3d 1363 (11th Cir.1996).
These cases have left unclear the exact nature of any duty that the law imposes on police with regard to exculpatory evidence. Several characteristics of this duty, however, seem evident. First, alleged failures to disclose do not implicate constitutional rights where no constitutional deprivation results therefrom. In this context, the constitutional deprivation must be defined as a deprivation of liberty without due process of law. In the absence of a cognizable injury, such as a wrongful criminal conviction, police sup *660 pression of evidence might still give rise to claims under state law. But unless the § 1983 plaintiff can point to a constitutional injury caused by the suppression, no § 1983 remedy will lie. See Albright v. Oliver, 510 U.S. 266, 270-71 n. 4, 114 S.Ct. 807,127 L.Ed.2d 114 (1994) (plurality opinion) (substantive due process cannot transform a state law malicious prosecution claim into a constitutional claim); id. at 281-86, 114 S.Ct. 807 (Kennedy, J., joined by Thomas, J., concurring in judgment) (same); Taylor, 81 F.3d at 436 & n. 5 (“To the extent that Goodwin bases its holding on a conclusion that the officer’s failure to disclose exculpatory evidence deprived the § 1983 plaintiffs of a liberty interest in avoiding prosecution on less than probable cause, that reasoning has been rejected in Albright.”).
Second, to speak of the duty binding police officers as a Brady duty is simply incorrect. The Supreme Court has always defined the Brady duty as one that rests with the prosecution. See, e.g., Brady, 373 U.S. at 87, 83 S.Ct. 1194 (“suppression by the prosecution of evidence favorable to an accused upon request violates due process”); Giglio, 405 U.S. at 154, 92 S.Ct. 763 (satisfying Brady “is the responsibility of the prosecutor”); Moore v. Illinois, 408 U.S. 786, 794, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972) (“The heart of the holding in Brady is the prosecution’s suppression of evidence....”); Agurs, 427 U.S. at 108, 96 S.Ct. 2392 (“the prosecutor’s constitutional duty to disclose”); Bagley, 473 U.S. at 676, 105 S.Ct. 3375 (“the prosecutor failed to disclose evidence”); Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (“the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of ‘reasonable probability’ is reached”).
The Brady duty is framed by the dictates of the adversary system and the prosecution’s legal role therein. Legal terms of art define its bounds and limits. The prosecutor must ask such lawyer’s questions as whether an item of evidence has “exculpatory” or “impeachment” value and whether such evidence is “material.” It would be inappropriate to charge police with answering these same questions, for their job of gathering evidence is quite different from the prosecution’s task of evaluating it. This is especially true because the prosecutor can view the evidence from the perspective of the case as a whole while police officers, who are often involved in only one portion of the case, may lack necessary context. To hold that the contours of the due process duty applicable to the police must be identical to those of the prosecutor’s Brady duty would thus improperly mandate a one-size-fits-all regime.
Third, it would be impermissible to hold the police liable for due process violations under § 1983 where they have acted in good faith. In Daniels v. Williams, the Supreme Court stated “that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.” 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The Fourteenth Amendment mandates, “nor shall any State deprive any person of life, liberty, or property, without due process of law.” U.S. Const, amend. XIV, § 1. Daniels holds that, as a matter of plain constitutional text, no “deprivation” occurs on account of official negligence. 474 U.S. at 330-33, 106 S.Ct. 662. Indeed, negligent conduct cannot by definition establish the “affirmative abuse of power” necessary to constitute a due process deprivation. See id. at 330-32, 106 S.Ct. 662. Under Daniels, then, police officer negligence or inadvertence in failing to turn over evidence cannot be actionable under § 1983.
In an analogous case to the present, the Supreme Court refused to find that police officers violated the Due Process Clause in the absence of evidence that they acted in bad faith. In Arizona v. Youngblood the Court addressed that area of the law that *661 “might loosely be called ... constitutionally guaranteed access to evidence.” 488 U.S. 51, 55, 109 S.Ct. 383, 102 L.Ed.2d 281 (1988) (internal quotation marks omitted). Youngblood involved police who failed to refrigerate clothing which contained semen stains and to perform tests on other semen samples. Id. at 53-55, 58, 109 S.Ct. 333. The defendant argued that properly preserved evidence might well have shown that he was innocent of any sexual assault. The Youngblood Court held, however, that “unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.” Id. at 58, 109 S.Ct. 333.
While Youngblood dealt with the failure to preserve evidence, its principles are certainly applicable to the present situation. Here, as in Youngblood, the prosecutor and ultimately the defense allegedly failed to receive exculpatory evidence from the police. Here, as in Youngblood, the police officers’ actions were alleged to constitute a due process violation. The Youngblood Court stressed its “unwillingness” to read the Due Process Clause to impose “on the police an undifferentiated and absolute duty” in that context. Id.
We similarly decline to impose a sweeping duty on police in the instant situation and note the obvious drawbacks of doing so.[2] For instance, such a duty would widen the legal gulf between prosecutors and police to such an extent as to make scapegoats of police for every item of evidence discovered post-trial. Prosecutors plainly enjoy absolute immunity in the exercise of their prosecutorial duties, of which the disclosure of Brady material to the defense is clearly one. See Kalina v. Fletcher, 522 U.S. 118, 123-29, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); Imbler v. Pachtman, 424 U.S. 409, 413-16, 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). To confer on prosecutors absolute immunity while denying to police the right to argue even bona fides would multiply exponentially litigation against even conscientious officers.
Further, the law has already placed ultimate responsibility upon the prosecutor for disclosing Brady material to the defense. When Brady violations occur, criminal defendants may have their convictions overturned. Because police knowledge is plainly imputed to the prosecution for purposes of the prosecutor’s Brady duties, see Kyles v. Whitley, 514 U.S. 419, 437-38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the prosecutor bears the responsibility for implementing procedures designed to ensure that police officers turn over all evidence to him, see Giglio, 405 U.S. at 154, 92 S.Ct. 763. To hold officers responsible under § 1983 for internal miscommunications that Kyles and Giglio charge the prosecution with preventing is to have § 1983 suits and Brady doctrine heading in diametrically opposed directions. Moreover, the § 1983 suit could well set up a continual exercise in finger-pointing between prosecutors and police over whose fault it was that the evidence never reached the defendant. Making internal communications between prosecutors and police the customary subject of § 1983 litigation would thrust the federal courts deep into the operations of state prosecutors’ offices, a breach of federalism principles for which the Due Process Clause of the Constitution provides no warrant.
This danger is plainly illustrated by this action. The prosecutor in Jean’s case, Walter Vatcher, made clear via two *662 affidavits-that Officers Collins and Shingle-ton had indeed disclosed substantial amounts of information to him with regard to the hypnoses. Vatcher stated that the officers had “informed [him] of the existence of the hypnoses and identification procedures” used in the Jean investigation. Vatcher was further informed that “there were some changes in [Shingleton’s] description after hypnosis,” specifically “that under hypnosis [Shingleton] no longer recalled any facial hair and his description of the [suspect’s] shirt may have changed somewhat.” Vatcher also reported that the two officers had told him of the hypnosis information months before trial and that he received “complete updates on the investigation, including facts concerning the identification procedures used.” Vatcher, in fact, commended Officers Shin-gleton and Collins for turning over “all [of the] evidence that [he] requested from them.” There is even substantial evidence via affidavits from Smith, Collins, Shingle-ton, and Wilson that Vatcher had been told of the existence of the hypnosis recordings and reports. Vatcher, however, stated in one of his affidavits that he did not “recall being made aware of recordings and written records.”
The difficulty of trying to sort out such everyday communications between prosecutor and police underscores the need to insist at a minimum that an actual bad faith deprivation of due process rights be alleged.- The conduct of Shingleton and Collins lies well below this threshold. While Jean contends that the officers acted in a “willful, wanton and reckless manner,” conclusory allegations will not suffice. See, e.g., Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 684-91 (4th Cir.2000); Hartley v. Parnell, 193 F.3d 1263, 1268 (11th Cir.1999); Wilkinson v. Russell, 182 F.3d 89, 106-06 (2d Cir.1999); Torres v. United States, 200 F.3d 179, 186 (3d Cir.1999). Jean simply is unable to provide evidence of a bad faith deprivation carried out by Collins and Shingleton — a matter on which the burden plainly rests with the plaintiff.[3] For example, Jean does not claim that Collins and Shingleton destroyed or otherwise failed to preserve the evidence that is now at issue — a fact which alone tends to negate any inference of bad faith. And while Jean again claims in conclusory fashion that the hypnosis recordings and reports were “patently exculpatory,” he does not point to any evidence showing that the officers actually knew of the significance of these items. Moreover, Jean conceded both in his brief and at oral argument that Vatcher at the very least was made aware of the existence of the two hypnoses. In sum, Jean points to nothing that resembles the kind of affirmative misuse of power that the Supreme Court has indicated would implicate due process protections.[4]
*663 Because there was no threshold bad faith deprivation, the precise contours of any duty on the police in situations such as these is something we need not explore in detail.[5] Several points, however, are clear. A Brady violation that resulted in the overturning of the § 1983 plaintiffs conviction is a necessary, but not a sufficient, condition for § 1983 liability on the part of the police. It is a necessary condition because the Brady violation establishes the requisite threshold of constitutional injury (a conviction resulting in loss of liberty) below which no § 1983 action can lie. It is not a sufficient condition, however, because the Brady duty is a no fault duty and the concept of constitutional deprivation articulated in both Daniels and Youngblood requires that the officer have intentionally withheld the evidence for the purpose of depriving the plaintiff of the use of that evidence during his criminal trial. This is what is meant by “bad faith.” And that must be established on the basis of evidence, including among other things the nature of the withheld material, that would negate any negligent or innocent explanation for the actions on the part of the police. Of course the bad faith manipulation of evidence on the part of the police cannot be countenanced. Constitutional absolution for the concealment, doctoring, or destruction of evidence would fail to protect the innocent, fail to assist the apprehension of the guilty, and fail to safeguard the judicial process as one ultimately committed to the ascertainment of truth. But what occurred here was at worst a negligent miscommunication among Vatcher, Collins, and Shingleton — an incident for which Vatcher under Brady, Giglio, and Kyles bears ultimate responsibility. Any decision on Vatcher’s part not to request additional hypnosis information cannot possibly be recast seventeen years later as a bad faith constitutional deprivation perpetrated by these officer defendants.
II.
As Jean has failed to allege a constitutional violation on the part of Collins and Shingleton, we would affirm the judgment.

. In his dissenting opinion, our brother Mur-naghan chides us for reinventing our theory of the case. This statement overlooks the fact that this case is here on remand from the Supreme Court in light of Wilson v. Layne. Wilson requires that this court address "whether the plaintiff has alleged the deprivation of an actual constitutional right at all.” 526 U.S. at 609, 119 S.Ct. 1692 (internal quotation marks omitted). It would be surprising if our court had not reviewed its earlier approach in light of Wilson's directive. Indeed, it would be irresponsible for us not to do so.

. Our brother Murnaghan’s dissent has a fundamental problem: it conflates the standards of a Brady violation with the standards of a § 1983 claim. The problem with this line of argument is simply that the Supreme Court does not accept it. Indeed, the dissent’s frustration on remand owes to the fact that it runs headlong into the Supreme Court’s decisions in Daniels and Youngblood. Despite its strenuous efforts, the dissent has failed to circumnavigate or otherwise explain away these two highly pertinent precedents. See, e.g., Post at 670 (“Daniels is a difficult case because the Court, along with judicial commentators, often describe the opinion as having ‘overruled’ Parratt.”).

. In many instances the first prong of Wilson v. Layne can be resolved on the pleadings alone. However, that makes little sense where a voluminous record is before us. Circuit courts, including this one, have not hesitated after Wilson to address the record in determining whether plaintiff has alleged a violation of a constitutional right. See, e.g., Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 684-91 & n. 18 (4th Cir.2000) (“Thus, SCI's claim ... is undermined by the evidence in the record.”); Hartley v. Parnell, 193 F.3d 1263, 1269 n. 2 (11th Cir.1999) ("We note that ... there is no evidence in the record. ... ”); Wilkinson v. Russell, 182 F.3d 89, 105 (2d Cir.1999) ("The record reveals another key source of information supporting defendants’ decision....”). Indeed, the concern expressed in Siegert that defendants not be put through unnecessary discovery would be vitiated if we failed to take account of the ample record that has already been assembled in this case. 500 U.S. at 231, 111 S.Ct. 1789. It would simply impose an unnecessary burden on defendants to move beyond Wilson’s first prong when the record before us conclusively points to the absence of any constitutional deprivation.

. Our brother Luttig contends in dissent that "Jean has never even had the cause, much less the opportunity, to develop a record with regard to Collins’ and Shingleton’s state of mind in withholding the evidence.” Post at 679. This assertion, however, is belied by the record itself. With respect to cause, the dissent apparently overlooks that Jean claimed bad faith in his complaint. By doing so, Jean himself indicated that the officers’ state of mind was relevant to the success of his suit. *663 Indeed, since the very first day that Jean was arrested, it has always been to his advantage to place the conduct of the police in the worst possible light. And Jean has enjoyed ample opportunity to uncover the existence of officer bad faith. Over seventeen years have now transpired since the time of Jean’s arrest and trial. During that time, Jean has been allowed extensive discovery. During his habeas case, Jean deposed both Officer Collins and Officer Shingleton. When the officers moved for summary judgment in the instant proceedings, Collins and Shingleton submitted affidavits in which they specifically rejected Jean’s contention that they acted in bad faith. Jean responded by submitting more than 650 pages of, inter alia, affidavits, exhibits, deposition transcripts, hypnosis transcripts, hypnosis worksheets, police reports, and police notes. Yet, as our brother Luttig correctly points out, the record as to officer bad faith is "entirely undeveloped.” Post at 679. The reason for this is not that Jean has lacked cause and opportunity to uncover such evidence, for he has had no shortage of either. Rather, it is because his seventeen-year search and voluminous submissions have uncovered nothing that raises a triable issue of fact on this point.

. We also do not address what sort of immunities the officers might claim if a constitutional violation had been properly alleged against them. Immunities appear by way of defense. And Wilson v. Layne makes clear that we need not proceed to address the immunity issue if no constitutional violation has been alleged. 526 U.S. at 609, 119 S.Ct. 1692.