United States Court of Appeals,

Eleventh Circuit.

No. 93-8986.

Mary Linda RATLIFF, Plaintiff-Appellee, Cross-Appellant,

v.

DeKALB COUNTY, GEORGIA;  Thomas E. Brown, Jr., individually and in his official capacity as Public Safety Director, DeKalb County Department of Public Safety;  Robert T. Burgess, Sr., individually and in his official capacity as Chief of Police, DeKalb County Department of Public Safety;  N. Eugene Moss, Capt., individually and in his official capacity as Commander, Division of Youth and Sex Crimes, DeKalb County Department of Public Safety;  John M. Cunningham, Sgt., individually and in his official capacity as Supervisor, Educational Services Unit, DeKalb County Department of Public Safety and A.R. King, Capt., individually and in his official capacity as Commander of Internal Affairs Division DeKalb County Department of Public Safety, Defendants-Appellants, Cross-Appellees.

Aug. 9, 1995.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:91-cv-1853-HTW), Horace T. Ward, Judge.

Before EDMONDSON and CARNES, Circuit Judges, and HAND[*], Senior District Judge.

EDMONDSON, Circuit Judge:

Defendants appeal[1] the district court's denial of qualified immunity on Plaintiff Mary Linda Ratliff's equal protection claims.[2] Ratliff cross appeals the district court's grant of

---

[*]Honorable W.B. Hand, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

[1]Defendants initially argue that Ratliff's claims are time barred. We are without jurisdiction to consider this issue because statute of limitations rulings are interlocutory orders which do not fall within the collateral order exception to nonreviewability. *See Digital Equip. Corp. v. Desktop Direct*, --- U.S. ----, ----, 114 S.Ct. 1992, 1998, 128 L.Ed.2d 842 (1994).

[2]Defendant DeKalb County also appeals the denial of its motion for summary judgment, a denial not about qualified immunity, but about the merits. We lack pendent party

summary judgment based on qualified immunity on her first amendment claims.[3]  Ratliff also requests this court to hold that the individual defendants are not entitled to qualified immunity against her claims for declaratory and injunctive relief.[4]

In reviewing the district court's denial of summary judgment, we—in most qualified-immunity interlocutory appeals—accept the facts which the district court assumed for the purposes of its decision about whether the applicable law was clearly established. *See Johnson v. Jones,* --- U.S. ----, ----, 115 S.Ct. 2151, 2159, 132 L.Ed.2d 238 (1995).  Mary Linda Ratliff began work as a Public Service Officer in defendant DeKalb County's Bureau of Police Services in 1985.  When she began in 1985, Ratliff was issued a "sworn police identification card" and police uniform, but the

---

jurisdiction of the kind needed to consider denial of DeKalb County's motion for summary judgment. *See Swint v. Chambers County Comm'n,* --- U.S. ----, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995).

[3]The grant of summary judgment based on qualified immunity is not an ordinarily reviewable final judgment subject to immediate appeal;  assuming we have discretionary pendent jurisdiction over this issue, *see Swint,* --- U.S. at ----, 115 S.Ct. at 1212, we decline to exercise it.

[4]Assuming we have discretionary pendent jurisdiction over this issue, *see Swint,* --- U.S. at ----, 115 S.Ct. at 1212, we decline to exercise it.  We, in passing, note this idea however. Because qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief. *See D'Aguanno, et al. v. Gallagher,* 50 F.3d 877 (11th Cir.1995);  *Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1149 n. 2 (11th Cir.1994).  But, as this court recently held in speaking about attorneys fees, "such awards, even in actions for injunctive and declaratory relief, are barred when the defendant's conduct meets the objective good faith standard encompassed by the qualified immunity doctrine." *D'Aguanno,* at 882.

parties dispute whether Ratliff was ever a "sworn officer." Ratliff's duties were to supervise county school crossing guards. She never received sworn officer pay. In 1988, the Public Services unit moved from the Public Safety building to an alternative school building and combined with the Youth and Sex Crimes Unit commanded by Defendant Moss. Public Services was placed under the command of Defendant Cunningham, who reported, through a Lt. Rowell, to Moss.

Defendant Burgess was the Chief of Police at all times relevant to the issues in this case, except from April 1989 through December 1989, when Burgess served as Acting Director of Public Safety. Defendant King was commander of the Internal Affairs (I.A.) unit. King conducted I.A. investigations into allegations of unethical conduct complained of by Ratliff, and into complaints by a Colonel Farrar that Ratliff was untruthful and insubordinate. The I.A. investigation of Ratliff concluded that the charges against her were unfounded.

At the same time as the move to the new school building in 1988, Moss informed Ratliff that she was no sworn police officer, would have to give up her uniform and weapon, and would have to keep daily activity sheets. In 1990, Defendant Brown became the Director of Public Safety and gave Ratliff official written notice that she was not a sworn officer, could not wear the uniform or gun, and was not to take the county car home when school was not in session.

Ratliff filed suit in August 1991 under 42 U.S.C. § 1983, alleging equal protection violations and violations of the First Amendment and due process clause. Ratliff is still employed by the

county.  Ratliff alleges that Defendants, all of whom were her supervisors or superiors in rank, violated her equal protection rights by discriminating against her on the basis of her sex and retaliating against her for her complaints of discrimination.

Defendants moved for summary judgment.  The district court denied defendants qualified immunity for the equal protection claim;  but in so doing, the court did not differentiate between Ratliff's equal protection claim for retaliation and her equal protection claim for gender discrimination.

Defendants argue that the district court erred in denying them qualified immunity on Ratliff's equal protection claim for retaliation.  The right to be free from retaliation is clearly established as a *first amendment* right and as a *statutory* right under Title VII;  but no clearly established right exists under the *equal protection* clause to be free from retaliation.  Ratliff responds that she does not allege an equal protection claim for retaliation, but says that such a right does exist in any event. In so arguing, Ratliff cites *Cate v. Oldham,* 707 F.2d 1176 (11th Cir.1983), *Bridges v. Russell,* 757 F.2d 1155 (11th Cir.1985), and *Little v. North Miami,* 805 F.2d 962 (11th Cir.1986).  But, each of these cases holds that a constitutional claim for retaliation may be brought under 42 U.S.C. § 1983 pursuant to the *first amendment,* not the equal protection clause.  Because no established right exists under the equal protection clause to be free from retaliation, we reverse the district court's denial of qualified immunity on Ratliff's equal-protection retaliation claim.  *See generally Lassiter v. Alabama A & M University,* 28 F.3d 1146 (11th

Cir.1994).

Plaintiff's claim of gender discrimination presents us with a more complicated issue. In considering a motion for summary judgment based on qualified immunity, the Supreme Court has held that courts should pay no attention to the subjective intent of the government actor. *See Harlow v. Fitzgerald,* 457 U.S. 800, 815-18, 102 S.Ct. 2727, 2737-38, 73 L.Ed.2d 396 (1982). *Harlow* was intended to make a fundamental change in the law of immunity. And the strict meaning of the words used in *Harlow* for the immunity standard would protect public officials from personal liability when the pertinent substantive law makes the official's state of mind an essential element of the alleged constitutional violation.

Despite *Harlow's* words, we have said that in one kind of qualified immunity case—where *discriminatory* intent is an element of the tort—intent remains relevant.[5] *See Edwards v. Wallace Community College,* 49 F.3d 1517, 1524 (11th Cir.1995). *See also Nicholson v. Georgia Dep't of Human Resources,* 918 F.2d 145, 147 (11th Cir.1990). We are bound by our earlier holding that, in qualified immunity cases, intent is a relevant inquiry *if*

---

[5]This limiting gloss on *Harlow* (and the later Supreme Court decisions that stress the objective nature of qualified immunity) subjects many public officials to trial and to personal liability when the official's conduct—that is, what was done in the physical world—could have doubtlessly been done lawfully by some reasonable officials. And the gloss seems to contradict the idea of objectively studying conduct—as opposed to speculating about an official's subjective motivations for his conduct—to determine whether immunity applies or not. In addition, the application of the gloss to the workaday lives of public officials undercuts considerably the public policy goals that the doctrine of qualified immunity is supposed to advance. The Supreme Court has not decided how allegations of discriminatory intent affect qualified immunity.

*discriminatory intent is a specific element* of the constitutional tort; and, we follow that rule here.

The district court determined that the evidence in the record would allow a finding of discrimination on the part of defendants and said that, as a legal matter, it was clearly established that the discrimination would violate federal law. Defendants say that nothing in the record here supports the notion that they, in fact, discriminated against plaintiff on account of her gender. Defendants may possibly be right; perhaps a full summary judgment should have been granted to one or more of them. We have stressed before to district courts that, given the ease of pleading cases of discrimination, plaintiffs seeking to avoid summary judgment should be strictly held to the requirements of Rule 56(e); the plaintiff must present specific nonconclusory facts that would support a jury verdict against the particular defendant on discriminatory intent. *See Edwards,* 49 F.3d at 1524.

But, we decline to review the denial of summary judgment on this ground, that is, that the district court in considering defendant's motions assumed erroneous facts or assumed facts which were unsupported by evidence in the record. This appeal is an interlocutory one. We mark the Supreme Court's decision and opinion in *Johnson v. Jones,* --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), which reminded us of the importance of the final judgment rule for appellate jurisdiction and which warned against easy resort to pendent jurisdiction. We question that we have the right in this case to exercise discretionary pendent jurisdiction over defendant's attack on the district court's

fact-based decisions;  but even if the law would allow it, we decline to exercise that jurisdiction.

Given the facts which the district court assumed for the purpose of ruling on defendants' motions, we—addressing the matter of qualified immunity only—affirm the denial of summary judgment for the individual defendants on the gender discrimination claim.

REVERSED IN PART, AFFIRMED IN PART and REMANDED.