PROPST, Senior District Judge, specially concurring:

I join the court's opinion on petition for rehearing. I write separately to address broader issues relating to qualified immunity.

At a recent Eleventh Circuit Judges' Workshop, a speaker remarked that "Keeping up with qualified immunity law is a full-time job." As a trial judge, I can well see how one might reach that conclusion. I concur in the denial of rehearing as to federal qualified immunity asserted by the defendants in their individual capacities. In doing so, I humbly make some suggestions which may reduce the workload of the followers of this still developing law. Although I, as a trial judge, granted qualified immunity to the two individual defendants in Jenkins v. Talladega City Board of Education, 95 F.3d 1036 (11th Cir. 1996), and later concurred in the denial of qualified immunity in this case, I submit that there is no inconsistency.[1]

Our holding in this case is premised on the holding in Bell v. Wolfish, 441 U.S. 520 (1979). Bell clearly holds that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Id., 441 U.S. at 535. Having held that punishment of pretrial

---

[1]Ironically, the majority in Jenkins partially relied upon this case in arriving at its holding. That opinion has now been vacated because of the granting of an en banc rehearing by the court.

1

detainees violates the Due Process Clause, the Court proceeded to determine what factors are considered in determining whether conduct constitutes "punishment."

The Court, after stating that factors identified in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963), "[provide] useful guideposts in determining whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word," concluded that, "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. . . . Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination will generally turn 'on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' Kennedy v. Mendoza Martinez, supra, at 168-69. . . ." (emphasis added). Id., 441 U.S. at 538. The Court added,

> Thus, if a particular condition or restriction is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' Conversely, if a restriction or condition is not reasonably related to a legitimate goal -- if it is arbitrary or purposeless -- a court may infer that the purpose of the governmental action is punishment that may not constitutionally be

2

inflicted upon detainees qua detainees (emphasis

added).

Id., 441 U.S. at 539.

Whether discussed in the context of "expressed intent" to punish, or in the context of determining the existence of a legitimate governmental goal, the purpose of the conduct is significant, and the purpose may be inferred from the total evidence. Both purpose and intent are fact related and it is difficult for me to see how such issues can be determined as a matter of law; particularly when the claim is that it was necessary to place a pretrial detainee on death row in order to protect him. Such is the issue in this case.[2]

On the other hand, Jenkins, supra, is not a case involving the Due Process Clause nor the subjective intent or purpose of the alleged violators. The Jenkins claims are Fourth Amendment claims which are properly analyzed under the Fourth Amendment's "objective reasonableness" standard rather than under a subjective due process standard. See Graham v. Connor, 490 U.S. 386 (1989). While the Bell Due Process Clause analysis requires, as an essential element, proof of expressed intent or at least circumstantial evidence of an unlawful purpose, the Fourth

---

[2]In this case, the underlying issue is intentional or purposeful punishment, vel non. The means of punishment, if it occurred, would appear to be incidental. While perhaps not raised by the plaintiff as a Fifth Amendment claim, one could argue that the purpose of the death row placement was to induce a confession. I will leave it to others to determine if a Fifth Amendment inquiry is purely objective.

3

Amendment analysis does not require any inquiry into subjective state of mind or purpose.  Graham, <u>supra</u>, 490 U.S. at 398.

Having noted this distinction, I further suggest that the holding in <u>Lassiter v. Alabama A & M Univ.</u>, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc), that "Courts must not permit plaintiffs to discharge their burden by referring to general rules and to the violation of 'abstract rights,'" is more easily applied in cases, such as Fourth Amendment cases, where the underlying inquiry is one of objective reasonableness.  I thus distinguish the facts and issues of this case from those in <u>Jenkins</u>.  In <u>Jenkins</u> the issue is whether reasonable officials would know that their conduct was objectively unreasonable.[3]  Such inquiries require more than an abstract consideration of Fourth Amendment law.  If the inquiry in <u>Jenkins</u> had involved an element of intent or purpose, the intent or purpose, not the specific conduct, may have been the appropriate issue to focus upon if the inappropriateness of such intent or purpose had been

---

[3]See <u>Foy v. Holston</u>, 94 F.3d 1528 where the Court stated:
> To prevail on a claim about family privacy, parents need to prove that a state actor interfered with a protected liberty interest without sufficient justification.  This constitutional tort requires no element of intent. . . .  Violations of the right to family association are determined by a balancing of competing interests. . .  so, state officials who act to investigate or to protect children where there are allegations of abuse almost never act within the contours of "clearly established law."

The <u>Jenkins</u> majority would apparently require the defendants, in the acknowledged absence of clearly established Eleventh Circuit law, to, by inductive consideration of a factually distinct Supreme Court case and one Associate Justice's dicta, decide what the Eleventh Circuit would likely hold.

4

clearly established.  The Jenkins majority relied upon a Supreme Court case which states that searches must be reasonable under the circumstances.[4]  This is little more direction than the insight that the Fourth Amendment itself provides.[5]  Apparently, the Jenkins majority would hold that public officials must determine whether a controlling appellate court will determine that certain conduct is egregious enough to qualify as being unreasonable even though none has specifically so held.

Perhaps no case provides a better example of the requirement of prior concrete law in Fourth Amendment cases that does Wright v. Whiddon, 951 F.2d 297 (11th Cir. 1992).  Tennessee v. Garner, 471 U.S. 1 (1985) clearly established that the use of deadly force to apprehend a fleeing, non-dangerous felony suspect is a constitutionally unreasonable seizure under the Fourth Amendment.[6]  Garner was decided six months before the incident in Wright.  In Wright, a person who had been arrested on a charge of armed robbery and had confessed to the crime ran from a courthouse while awaiting a probation revocation hearing.  The escapee was admittedly unarmed, but was fatally wounded as he ran down an alley.  The court held that Garner did not clearly establish that deadly force cannot be used against a fleeing,

---

[4]"[w]hether there was a reasonable relationship between the scope of the search (the measures adopted and the objectives of the search").

[5]"The right of the people to be secure in their persons . . . against unreasonable search and seizures. . . ."

[6]See also Acoff v. Abston, 762 F.2d 1543 (11th Cir. 1985).

previously arrested, non-dangerous felon.  Thus, the police officer who shot the fleeing felon was entitled to qualified immunity.[7]

Since this case, unlike Jenkins and Wright, implicates subjective intent or motive, the issue remains as to how such intent claims are to be considered during the course of a qualified immunity analysis.  In Ratliff v. DeKalb County, Ga., 62 F.3d 338, 341 (11th Cir. 1995), the court stated, "We are bound by our earlier holding that, in qualified immunity cases, intent is a relevant inquiry if discriminatory intent is a specific element of the constitutional tort; and, we follow that rule here."  Compare, however, Hansen v. Solden-Wagner, 19 F.3d 573, 578 (11th Cir. 1994)("For qualified immunity purposes, the subjective motivation of the defendant official is immaterial . . . Harlow's objective standard would be rendered meaningless if a plaintiff could overcome a summary judgment motion based on qualified immunity by injecting the defendant's state of mind into the pleadings.")[8]

---

[7]Of interest as it relates to the facts of this case is the following dictum in Wright: "At a minimum, '[i]t is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'  Graham [v. Garner, 471 U.S. 1 (1985)], 109 S.Ct. at 1871 n. 10."  This dictum clearly distinguishes the appropriate analysis here from that in Jenkins.

[8]This holding was made in even a First Amendment case where an element of the Mt. Healthy analysis includes a determination of whether the defendant's conduct was substantially motivated by a consideration of the plaintiff's protected speech.  See Mt. Healthy v. Doyle, 429 U.S. 274 (1979).  Compare Hansen's holding to that in Fikes v. City of Daphne, 79 F.3d 1079 (11th Cir. 1996).

In the recent case of <u>Foy v. Holston</u>, cited <u>supra</u>, the court attempted to strike a balance in cases in which intent is an element of the underlying claim. The court in <u>Foy</u> stated,

> One trigger to the doctrine's application depends upon whether the record establishes that the defendant, in fact, did possess a substantial lawful motive for acting as he did act.  At least when an adequate lawful motive is present, that a discriminatory motive might also exist does not sweep qualified immunity from the field even at the summary judgment stage.  Unless it, as a legal matter, is plain under the specific facts and circumstances of the case that the defendant's conduct--despite his having adequate lawful reasons to support the act--was the result of his unlawful motive, the defendant is entitled to immunity.  Where the facts assumed for summary judgment purposes in a case involving qualified immunity show mixed motives (lawful and unlawful motivations) and pre-existing law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity.

In note 9, the court added:

> We know that matters of intent are often jury questions.  But, even at summary judgment, "where the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff the [] court may properly acknowledge that fact. . . ."  <u>Young v. General Foods Corp.</u>, 840 F.2d 825, 830 (11th Cir. 1988)(quoting <u>Grigsby v. Reynolds Metals Co.</u>, 821 F.2d 590, 597 (11th Cir. 1987)). . . .  Here the record, in fact, shows substantial lawful intent, while not ruling out some unlawful intent, too.  Unlike <u>McMillian</u> and <u>Ratliff</u> (which involved pointed district court fact findings--that we did not review--about the intent of the defendants and in which the <u>Mt. Healthy</u> doctrine was not discussed), we are deciding the qualified immunity question based on circumstances which include indisputable and sufficient lawful motivations on the part of Defendants.".

7

Crawford, El v. Britton, 93 F.3d 813 (D.C. Cir. 1996) (en banc), proposes another solution, in cases involving the intent or motive of public officials, to preserving the holding in Harlow v. Fitzgerald, 457 U.S. 800 (1982) that requires some protection to such officials from the costs of lawsuits that unduly chill their exercise of discretion in the performance of their public duties. The apparent majority of the court held that when motive or intent is an essential element of a constitutional tort claim, the plaintiff, in opposition to a motion for summary judgment based on qualified immunity, has to present clear and convincing evidence that the defendant acted with an unconstitutional motive. The court split with regard to the amount of discovery to be allowed to plaintiffs on the intent or motive issue before the trial court rules on such motions. While the number of concurring opinions makes it difficult to ascertain the holdings of the court, at least one commentator has stated that while Judge Williams' "opinion for the court" adopted the clear and convincing standard, Judge Ginsburg's opinion prevailed as to the amount of discovery allowed. Judge Ginsburg wrote that "a plaintiff [should be allowed] to pursue limited discovery only upon a showing that he has a reasonable likelihood of turning up evidence that a jury could consider clear and convincing proof of the defendant's unconstitutional motive. . . ." It appears that Judge Silberman apparently stood alone in his view that there should be only an objective inquiry into the pretext of an

asserted legitimate motive.  Judge Silberman would apparently hold that if a defendant articulates any reasonable motive for his actions, he is entitled to summary judgment unless a jury might find that such a suggested motive, whether true or false, would be unreasonable.  Apparently a jury would not be allowed to determine the true motive.  Judge Silberman's view is close to the holding in <u>Foy</u>.

In note 5 of <u>Foy</u>, the court remarked on the difference between constitutional torts which require proof of intent or motive and those that don't.  The court stated:

> But, many constitutional torts do not require
> the plaintiff to prove that the defendant
> possessed discriminatory intent in acting.
> For qualified immunity in such cases, no
> court doubts that Harlow's test of objective
> reasonableness applies: The subjective intent
> of the government actor is unimportant to the
> resolution of the qualified immunity issue.
> The sole question is whether any reasonable
> official (regardless of subjective motive)
> could have acted as the defendant acted
> without violating clearly established law.

<u>Jenkins</u> involves the type case discussed in note 5 in <u>Foy</u>.  Our instant case does implicate the subjective intent of the defendant.  An issue is whether claims involving subjective intent are appropriate for summary judgment based upon qualified immunity if a legitimate motive is simply posited.  I find it difficult to see how such cases can be determined at the summary judgment stage if there is any substantial evidence of an illegal motive in view of the established law which precludes a trial court's making credibility determinations, weighing the evidence, and interfering with a jury's drawing of legitimate inferences

9

from the evidence.  See <u>Welch v. Celotex Corp.</u>, 951 F.2d 1235, 1237 (11th Cir. 1992).

I fully agree with the concerns expressed by various judges about the exponential growth of such claims against public officials.[9]  I am simply concerned that the rules be "clearly established" so that neither parties nor trial courts will have to continue to play panel roulette and can avoid unnecessary and costly appeals.  For an indication of the difficulty facing trial courts, compare the holding in <u>Foy</u>, <u>supra</u>, with that in <u>Ratliff</u>, <u>supra</u>, and the vacated <u>Jenkins</u> majority opinion with the opinion in <u>Wright</u>. Also consider the above quoted statement in <u>Hansen</u>. While our holding in this case appears to be consistent with that in <u>Ratliff</u>, it may be somewhat inconsistent with that in <u>Foy</u>, although <u>Foy</u> purports to distinguish our holding.

I suggest that the qualified immunity issues cry out for further en banc consideration, especially as to the claims involving intent or motive as an element <u>vis</u> <u>a</u> <u>vis</u> those which do not.[10]

---

[9]See Judge Silberman's opinion in <u>Crawford-El</u>, <u>supra</u>, for a historical and statistical analysis.

[10]<u>Crawford-El</u>, <u>supra</u>, recognizes that trial courts are caught in a "vortex of changing standards."