[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 2, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-13809
Non-Argument Calendar

_____

D.C. Docket No. 02-03056-CV-CO-S

SUSAN CLARK,

Plaintiff-Appellant,

versus

ALABAMA, STATE OF,
LEE EAKINS,

Defendants-Appellees,

JEFFERSON COUNTY HEALTH
DEPARTMENT,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 2, 2005)

Before ANDERSON, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Susan Clark appeals through counsel the district court's grant of summary judgment in favor of her employer, the State of Alabama ("the state"), in her retaliation claim, filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3; and in favor of her former supervisor, Lee Eakins ("Eakins"), in her equal-protection claim, filed pursuant to 42 U.S.C. § 1983. On appeal, Clark argues that the district court erred in concluding that no genuine issue of material fact existed as to these claims.[1] For the reasons set forth more fully below, we affirm the district court's order granting the defendants summary judgment on Clark's Title VII and § 1983 retaliation claims.

Clark, an employee of the state who serves as a Disease Intervention Specialist ("DIS"), filed a counseled amended complaint against the state and Eakins, alleging, among other claims, that the state retaliated against her, in violation of Title VII, for engaging in the protected activity of testifying at trial on behalf of a co-employee and herself as part of a prior Title VII action ("Clark I"). Clark also contended that, on February 22, 2002, Eakins violated her equal-

---

[1] Clark also asserted in her amended complaint a claim based on the state's non-payment of overtime, in violation of the Fair Labor Standards Act ("FLSA"); and a state-law claim of assault and battery against Eakins. However, on Clark's motion, the court dismissed her FLSA claim. Moreover, after the court granted summary judgment on Clark's federal claims, it declined to exercise supplemental jurisdiction over Clark's remaining state-law claim. Because Clark has not challenged these decision, we deem them abandoned. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) (issues not argued in initial brief are deemed abandoned).

protection rights, under § 1983, by "physically grabb[ing] and restrain[ing] [her] in retaliation for [her] complaints of race discrimination, retaliation and/or her testimony in [Clark I]."

In a joint status report, the parties agreed on the following facts. In 1994, Clark accepted employment with the state as a DIS with the Dallas County Health Department ("DCHD"). As a condition of her employment, Clark was subject to the state's policies and procedures, which included the state's policy prohibiting sexual harassment in the workplace.[2] In 1996, based on a settlement agreement in Clark I, Clark was transferred to work at the Jefferson County Health Department ("JCHD"), as a DIS in the Sexually Transmitted Disease ("STD") Program. Although Clark remained an employee of the state, employees of the JCHD supervised her work. (Id.). Clark's duties as a DIS included (1) questioning persons who tested positive for STDs on the identities of their sexual and/or needle-sharing partners; (2) locating these partners and attempting to have them tested; (3) completing accurate forms and documents; and (4) maintaining accurate

---

[2] This policy on sexual harassment instructed that:

Every employee has a right to work in an environment free of harassment on the basis of gender. It is and shall continue to be the policy of this Department that its employees and their work environment shall be free from all forms of sexual harassment and intimidation. Verbal and physical conduct of a sexual nature including sexual advances, requests for sexual favors, or other conduct which tends to create an intimidating, hostile, or offensive work environment by any employee, supervisor, or manager is strictly prohibited . . .."

indices of clients, suspects, and partners.

This report further included that, from 1996 through August 2001, Lee Eakins, another DIS employed by the JCHD, served as Clark's immediate supervisor. From August 2001 until Clark's transfer in 2002 to the Tuscaloosa County Health Department ("TCHD"), Bridget Norman, a federal employee who was on assignment as a Supervisory Public Health Advisor with the JCHD, served as Clark's immediate supervisor. Moreover, from 1996 through 2002, Terrie Outlin, the STD Program Manager for the JCHD, supervised both of Clark's supervisors. In February 2002, Clark filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that, since 1996, the state had "harassed, intimidated, and subjected [her] to differing terms and conditions of employment and discipline," in retaliation against her testifying in Clark I.

Citing to these facts and to evidence it gathered during discovery, the state filed a summary judgment motion and a supporting brief. The state asserted in the argument section of its brief that, in attempting to establish a prima facie case of retaliation, Clark only had alleged two acts that arguably could qualify as "adverse employment actions," that is, the suspension and transfer of her employment. The state also asserted that Clark could not show that her protected activity was causally related to her adverse employment actions because these events were

separated by six years. The state similarly argued that no evidence showed that Clark's disciplinary actions were linked to her prior testimony. In addition, the state contended no inference of causation existed because the persons who requested Clark's transfer did not know of her protected activity.

Furthermore, the state argued that, even if the court concluded that Clark had established a prima facie case of retaliation, the state had presented legitimate reasons for Clark's suspension and transfer. The state explained that these adverse employment actions were taken because Clark had a history of disciplinary problems. The state also argued that, because the JCHD was not a division of the state, Dr. Donald E. Williamson, M.D., the state's Health Director, had "little choice" but to honor the JCHD's request that Clark be reassigned to another office. Regardless, the state argued that Clark had produced no evidence showing that Dr. Williamson's decision to suspend and transfer Clark's employment was linked to Clark's prior protected activity in Clark I.[3]

The state introduced in support of its summary judgment motion Clark's deposition, in which Clark testified that, as the result of a June 7, 1996, settlement

---

[3] Although the state also argued in the district court that it was not a proper defendant in this action, it has failed to challenge in a cross-appeal the district court's determination to the contrary. Thus, we conclude that this issue is waived. See Pierre v. Rivkind, 825 F.2d 1501, 1506 n.3 (11th Cir. 1987) ("appellee who has failed to cross-appeal may not attack a decree to enlarge his own rights thereunder or attack the rights of his adversary").

agreement in Clark I, Clark was transferred to work at the JCHD. The state also introduced Eakins's deposition, in which he testified that his only knowledge about Clark I was "what Susan Clark has said," and that Clark had told him that she had testified on behalf of some employee. Eakins stated, however, that he did not know that Clark had been transferred to the JCHD based on a settlement agreement in Clark I. Similarly, Outlin testified during his deposition that, although Clark "made statements . . . during her time with [the JCHD] that she was there by court order," Outlin "was told that [these statements were] not true."

On Clark's disciplinary actions, the state introduced documents showing that, on June 9, 1999, Eakins issued Clark a written warning for insubordination, stating that Clark had attended an organizational meeting with Girl's Incorporated, after having been instructed not to attend the meeting. On November 15 and 28, 2000, Outlin issued Clark written warnings for being absent without leave ("AWOL"), when Clark attended a meeting of the Governor's Commission on AIDS. In August and September 2001, Norman issued Clark two verbal warnings for (1) being AWOL from her work site, and (2) excessive use of leave. On December 6, 2001, Norman issued Clark a verbal warning for failure to submit cases in a timely manner. On February 1, 2001, Norman issued Clark a memorandum, counseling her on time management and "the number of delinquent

6

paper[s] in [her] pouch." Finally, on February 22, 2002, Norman issued Clark a memorandum, stating that an e-mail Clark had forwarded to four JCHD employees, including Eakins, which depicted a nude man with his penis caught in a glass shower door ("sexual e-mail"), violated state policies, including those on electronic communication, professional conduct, and sexual harassment.

During Clark's deposition, she conceded that she forwarded the sexual e-mail to JCHD employees, and that an intentional forwarding of such an e-mail would violate the state's sexual harassment policy, but she asserted that she sent it by mistake. Clark also stated that, on February 25, 2002, she asked Eakins why he had forwarded the sexual e-mail to Outlin, after which he yelled at her and grabbed her arm. That same day, Clark filed an EEOC complaint and lodged a complaint against Eakins with the Birmingham Police Department, alleging that he grabbed her arm during a conversation about the e-mail.

Additional evidence included a March 15, 2002, memorandum from Norman to Dr. Williamson, which was sent through Outlin and Dr. Michael Fleenor, M.D., the Health Officer for the JCHD, in which Norman requested that the state suspend Clark for five days without pay, based on Clark's sending the sexual e-mail, insubordination, excessive use of leave, and failure to complete work assignments in a timely manner. Dr. Williamson responded by informing

7

Clark that a due process hearing would be conducted on March 27, 2002, to determine whether she should be suspended. In addition, on March 19, 2002, Dr. Fleenor wrote a letter to Dr. Williamson, outlining Clark's disciplinary problems and expressing his desire that Clark be transferred.

On April 9, 2002, after the state conducted a due process hearing, Dorothy Norwood, the hearing officer, determined that the evidence offered by the JCHD supported its recommendations. Norwood, thus, recommended that Clark be (1) suspended for three days without pay, and (2) reassigned permanently to the TCHD. In making her findings and recommendations, Norwood summarized Clark's disciplinary incidents, along with noting that the JCHD had followed its progressive discipline policy, and that Dr. Fleenor had requested the transfer. Furthermore, on April 11, 2002, after reviewing this report, Dr. Williamson sent Clark a letter, informing her that he had adopted these recommendations.

The state also introduced James Michael O'Cain's deposition, in which he testified that (1) as a federal employee employed by the Federal Centers for Disease Control, he was assigned, from April 1990 until he retired in January 2003, as the state's STD Director; (2) although he did not supervise Clark while she was assigned to the JCHD, he was informed of her disciplinary problems; and (3) he discussed these problems and responded to questions from Outlin on

8

disciplinary procedures. O'Cain, however, clarified that any negative comments he made were not related to Clark's protected activities in Clark I. Dr. Williamson similarly attested to these facts in his affidavit, along with asserting that (1) O'Cain worked with, but did not directly supervise, Clark; and (2) O'Cain was supervised by federal, instead of state employees.[4]

Eakins also filed a motion for summary judgment, arguing, among other things, that no genuine issue of material fact existed as to the § 1983 claim because Clark had failed to show that Eakins was acting under color of state law when he committed the alleged retaliatory act. Eakins also contended that he was entitled to qualified immunity because Clark had failed to show that he violated clearly established law. Eakins explained that, assuming the validity of Clark's allegation, (1) she failed to show a connection between the act and her prior testimony in Clark I; and (2) this Court had no clearly defined law at the time of

---

[4] Williamson further attested in his affidavit that (1) his decision to suspend Clark's employment was based on Norwood's recommendation; (2) his decision to transfer Clark temporarily to Tuscaloosa County was based on the request from JCHD that Clark be removed, and on the state's need for an additional DIS in Tuscaloosa; (3) "[o]nce [Dr. Fleenor] asked that Ms. Clark be reassigned, [Dr. Williamson] felt it incumbent on [him] to do that"; (4) his decision to permanently reassign Clark was based on Norwood's recommendation; (5) these decisions "had nothing to do with Ms. Clark's involvement in a lawsuit more than five years earlier"; (6) the state Health Department and the county health departments were "separate and distinct entities"; and (7) while Dr. Williamson exercised general supervisory authority over county health officers under state law and could remove a health officer under limited circumstances, he did not believe that Clark's situation would have warranted his exercise of this authority in requiring that Clark stay at JCHD.

9

the incident stating that the act of grabbing her arm in retaliation for her testimony in a trial six years earlier, without more, violated her constitutional rights. Eakins cited to, among other evidence, his deposition testimony that he (1) did not touch Clark, and (2) was not directed to take personnel action against her.

Clark filed a combined response to the defendants' motions for summary judgment.[5] Clark argued that a genuine issue of material fact existed as to whether she established a causal connection between her protected activity and the adverse employment actions and, therefore, a prima facie case of retaliation because O'Cain testified that (1) he believed and informed other persons that Clark's support of the plaintiff in Clark I was for the purpose of diverting attention away from her own problems, leading him to believe that Clark was a "troublemaker"; (2) after Clark testified in Clark I, O'Cain followed her employment and told her different supervisors that she was a problem employee; (3) despite Clark's repeated complaints of discrimination and retaliation, the state did not investigate them. Clark further contended that she showed that Eakins knew of her protected activity by (1) testifying during her deposition that Eakins took a phone call that

---

[5] Although the state objected to Clark's filing of this brief as untimely, the court implicitly overruled this objection, as demonstrated by its statement in granting the defendants' summary judgment as follows: "[t]he facts set out below are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party."

was meant for her from the plaintiff in Clark I, after which he asked her about the caller, and (2) attaching affidavits from Anthoneria McElroy and June Wilson, in which they attested that employees of the JCHD knew about the facts surrounding Clark's transfer to the JCHD. Clark asserted, as well, that she showed a continuing pattern of retaliation throughout her employment and established an inference of retaliation from O'Cain's repeated disparaging comments about her.

In addition, Clark argued that the state's reasons for the adverse employment actions were pretextual because the disciplinary actions on which it relied were unsupported by the record. Clark specifically contended that (1) her attendance at the June 1999 meeting occurred during her lunch break; (2) her disciplinary action in August 2001 for being AWOL occurred despite that she received permission from Norman to return late from lunch; (3) her September 2001 warning about her use of leave resulted from her inability to re-enter the country for a week after the terrorist attack on September 11, 2001; (4) her December 2001 warning for failure to submit cases in a timely manner was contradicted by Outlin's testimony that the JCHD's records showed otherwise; (5) Outlin agreed that Clark's February 2002 memorandum counseling her on time management was not a disciplinary write-up; and (6) her February 2002 warning on the sexual e-mail was unreasonable because she sent the e-mail by mistake, the

11

e-mail was not prohibited by any county or state policies, and employees of the JCHD dealt with similar pictures on a daily basis as part of their job duties.

Last, Clark asserted that she established a prima facie case against Eakins because, by asserting that he was entitled to qualified immunity, Eakins essentially conceded that he was "acting under color of law" when he attacked her. Clark also contended that Eakins was not entitled to qualified immunity because "it [was] clearly unlawful for a supervisory employee to physically attack one of his subordinates" and to "create a hostile work environment."

The district court granted the state's motion for summary judgment "in all respects," and Eakins's motion in part. In examining whether Clark had shown a prima facie case of Title VII retaliation against the state, the court discussed that the parties had not disputed that Clark's participation in Clark I constituted protected activity. The court also found that Clark's disciplinary actions and her ultimate suspension and transfer to another department constituted adverse employment actions. In addition, the court determined that Clark provided sufficient evidence to show that the state was aware of her protected activity.

Nevertheless, the court concluded that Clark failed to establish a prima facie case because she failed to show a causal connection between her protected activity and the adverse employment actions. In reaching this conclusion, the court found

that the substantial time lapse, that is, six years, between Clark's protected activity in Clark I and the suspension and transfer of her employment "hindered her ability to prove causal connection." The court discussed that, although Clark also identified as retaliatory acts her supervisor's unfounded disciplinary actions against her, she had not established that they either dated back to 1996, or occurred on a continuous basis. The court also determined that (1) Clark had failed to show that all of the disciplinary acts were unwarranted, and (2) her "intervening violations of state policies [had] operate[d] to sever any causal connection." The court concluded, as such, that Clark had failed to establish a prima facie case of Title VII retaliation.

On Clark's claims against Eakins, the court determined that summary judgment was warranted as to Clark's § 1983 equal-protection claim to the extent she was seeking monetary damages. In doing so, the court explained that, although the right to be free from retaliation was a clearly established First Amendment right under Title VII, it was not a clearly established equal-protection right. Moreover, although the court recognized that Clark's failure to show a violation of a clearly established constitutional right did not bar her corollary claim for injunctive relief, the court concluded that this request for relief was moot because Clark was no longer under Eakins's supervision. Finally, the court

13

declined to exercise supplemental jurisdiction over Clark's remaining state-law claim of assault and battery.

**Issue 1:** **Retaliation Claim**

Clark argues for the first time on appeal that the court erred in granting the state summary judgment on her Title VII retaliation claim because, by introducing O'Cain's testimony that he believed and informed Clark's supervisors that Clark was a "troublemaker," Clark showed direct evidence of retaliation. In the alternative, Clark contends that she set forth a prima facie case of retaliation because, despite the six-year gap between her protected activity of testifying in Clark I and the suspension and transfer of her employment, she established a causal connection through (1) evidence showing a pattern of continued retaliation, (2) O'Cain's testimony that he communicated his belief that she was a "troublemaker" to her supervisors, and (3) Clark's testimony that she consistently complained of retaliation. After discussing the circumstances surrounding her "bogus" disciplinary actions, Clark also argues that the state failed to provide a legitimate reason for suspending and transferring her employment.

A court's grant of summary judgment is reviewed de novo, "view[ing] all evidence and all factual inferences therefrom in the light most favorable to the non-moving party." Miller v. King, 384 F.3d 1248, 1258-59 (11th Cir. 2004).

14

"Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." Id. (quotation omitted). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quotation omitted).

It is unlawful under Title VII for an employer to retaliate against an employee "because [the employee] has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter [of Title VII]." See 42 U.S.C. § 2000e-3(a). In cases involving circumstantial evidence of retaliation, once a plaintiff employee successfully alleges a prima facie case, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." Sullivan v. National Railroad Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999) (quotation omitted). "If the defendant offers legitimate reasons, the presumption of retaliation disappears." Id. "The plaintiff then must show that the employer's proffered reasons for taking the adverse action

15

were actually a pretext for prohibited retaliatory conduct." Id. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant's articulated reasons is pretextual, the [defendant] is entitled to summary judgment." Chapman v. AI Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (en banc) (discussing pretext in context of age and disability discrimination).[6]

### a.    **Whether Clark offered direct evidence of retaliation**

To the extent Clark is arguing that the court erred in granting summary judgment on her Title VII retaliation claim because she offered direct evidence of retaliation, she arguably waived this argument by failing to raise it in the district court. See Stavropoulos v. Firestone, 361 F.3d 610, 616 n.6 (11th Cir. 2004) (declining to consider a legal theory that was not presented to the district court), petition for cert. filed, No. 04-1099 (U.S. Feb. 11, 2005). Regardless, this argument is without merit. As Clark contends, "[w]here the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence." Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997).

---

[6] The Supreme Court set out this burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

We, however, explained in <u>Merritt</u> that direct evidence is "evidence, which if believed, proves existence of fact in issue without inference or presumption. Evidence that only suggests discrimination, or that is subject to more than one interpretation, does not constitute direct evidence." <u>Id.</u>; <u>see</u> <u>also</u> <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1086 (11th Cir. 2004) ("only the most blatant remarks . . . constitute direct evidence").

In the instant case, Clark has cited as direct evidence to O'Cain's testimony that he believed, and informed Clark's supervisors, that Clark was a "troublemaker." However, O'Cain, who was a federal employee assigned to serve at the Director of the state's STD program, did not supervise Clark, and, thus, was not responsible for disciplining her. Moreover, O'Cain testified that, in discussing Clark's performance or behavior with other supervisors, any negative comments he made were not related to her protected activity of testifying in Clark I. Clark, therefore, failed to show that O'Cain's testimony evidence, if believed, "prove[d] [the] existence of [the retaliatory motive] without inference or presumption." <u>See</u> <u>Merritt</u>, 120 F.3d at 1189. Thus, the record does not reflect that Clark presented direct evidence in response to the state's summary judgment motion.

**b.** **<u>Whether the state's adverse employment actions were causally related to Clark's protected activities, such that she established a prima facie case of Title VII retaliation</u>**

17

Furthermore, the district court did not err in concluding that Clark failed to establish a prima facie case of Title VII retaliation. To successfully assert such a claim, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004). As the parties do not contest the court's determination that Clark satisfied the first two elements of this prima facie case, the only issue for us to determine is causation.

In establishing that the state's adverse actions of imposing a three-day suspension and transferring her employment to the TCHD was causally related to her protected activity of testifying in Clark I, Clark only needed to show that "the decision-maker[s] [were] aware of the protected conduct," and "that the protected activity and the adverse action were not wholly unrelated." See Gupta v. Florida Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000) (quotation omitted). Moreover, "[a] plaintiff satisfies this [causation] element if she provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse action." Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (quotation and marks omitted) (reviewing grant of summary judgment in claim filed under the anti-retaliation

18

provision of the Americans with Disabilities Act).  However, this "temporal proximity" must be "very close."  Id.  "If there is a substantial delay between the protected expression and the adverse action[,] in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." Id. at 1220-21 (concluding that three-month period between the protected activity and the adverse employment action, in the absence of other evidence of causation, was insufficient to establishing a prima facie case of Title VII retaliation).

Similarly, in Maniccia v. Brown, 171 F.3d 1364 (11th Cir. 1999), we concluded that the district court did not err in determining that the employee failed to establish this causation element.  Id. at 1370.  In Maniccia, the employee was reassigned to a different position 15 months after she filed a sexual harassment grievance against her supervisor, and her employment was terminated 21 months later.  Id. at 1369-70.  We determined that (1) instead of representing a pattern of retaliatory activity, these two employment actions were isolated events that had no temporal relationship to her protected activity; and (2) "[t]he more than 15-month period that elapsed between [her] grievance and the alleged adverse employment actions belie[d] her assertion that the former caused the latter."  Id. at 1370. Moreover, we explained that the employee failed to show any other evidence suggesting this causation.  Id.

Compared with the 3-month delay in <u>Higdon</u>, and the 15-month delay in <u>Maniccia</u>, the 6-year gap between Clark's protected activity and the suspension and termination of her employment was an even greater "delay."  Moreover, in the absence of "a close temporal relationship," Clark failed to produce sufficient alternative evidence showing that her protected activity and the employment actions were "not wholly unrelated."  See <u>Gupta</u>, 212 F.3d at 590.  Although Clark cites to a continued pattern of disciplinary acts against her, a three-year gap existed between Clark's testimony in Clark I and her first written warning in June 1999.  Moreover, although O'Cain conceded that he informed Clark's supervisors that Clark was a "troublemaker," these discussions were conducted as part of O'Cain's duties as the state's STD Director and were supported by Clark's disciplinary record.  Thus, Clark failed to allege successfully a <u>prima facie</u> claim of Title VII retaliation.  See <u>Higdon</u>, 393 F.3d at 1220-21.

**(c)** **<u>Whether Clark established that the state's proffered non-</u>**
**<u>retaliatory reasons for the adverse employment actions were</u>**
**<u>pretextual</u>**



Even if Clark established a <u>prima facie</u> case of Title VII retaliation, the district court did not err in granting summary judgment because Clark failed to show that the state's proffered non-discriminatory reasons for taking these actions were not pretextual.  See <u>Admiral Ins. Co. v. Cresent Hills Apartments</u>, 328 F.3d

1310, 1312 (11th Cir. 2003) ("we may affirm a district court's decision [to grant summary judgment] on any adequate ground, even if it is other than the one on which the court actually relied"). As discussed above, once a plaintiff successfully alleges a prima facie case of retaliation, and once the employer articulates a legitimate, non-discriminatory reason for the challenged employment action, the plaintiff must proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual. Sullivan, 170 F.3d at 1059. In determining whether the plaintiff has met this burden, courts examine whether "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [exist, such] that a reasonable factfinder could find [all of the reasons] unworthy of credence." Watkins v. Sverdrup Tech., Inc., 153 F.3d 1308, 1314 (11th Cir. 1998) (internal quotation omitted).

As a preliminary matter, a plaintiff must establish that "the employer was actually aware of the protected expression at the time it took adverse employment action." Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000) (reasoning that "a decision-maker cannot have been motivated to retaliate by something unknown to him"). To the extent the state is arguing that the persons who, ultimately, decided to suspend and transfer Clark's employment

21

did not have knowledge of her protected activity, the state arguably waived this issue by failing to cross-appeal the court's determination, at least in the context of determining whether Clark established a prima facie case, that sufficient knowledge existed.  See Rivkind, 825 F.2d at 1506 n.3.  Although the record includes Dr. Williamson's attestation that his ultimate decision to suspend and transfer Clark's employment "had nothing to do with Ms. Clark's involvement in a lawsuit more than five years earlier," he did not state that he had no knowledge about Clark I.  Moreover, Clark produced evidence showing that Eakins and other JCHD  employees knew of the facts surrounding Clark's transfer to the JCHD.

We, however, need not determine whether this issue is waived or whether sufficient knowledge existed because Clark failed to show that the state's reasons for the employment actions were pretextual.  Despite Clark's arguments that pretext was shown by the fact that her suspension and transfer were based on unfounded disciplinary acts against her, at least some of the conduct for which Clark was disciplined was forbidden in the state's written policies and procedures.  See Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984) ("Title VII does not take away an employer's right to interpret its rules as its chooses, and to make determinations as it sees fit under those rules").  Indeed, the parties stipulated that Clark was subject to the state's policies, which included a

22

policy prohibiting sexual harassment in the workplace. Clark also conceded that she forwarded, albeit mistakenly, the sexual e-mail to JCHD employees.

Clark contested, as well, whether these disciplinary acts were warranted because (1) her use of leave did not violate the JCHD's policies; (2) her use of leave in part was because of her inability to re-enter the country for a week after September 11, 2001; (3) her production records contradicted her warning for failure to submit records; (4) her February 2002 memorandum on time management was not a "disciplinary write-up"; and (5) the negative effect of her sexual e-mail was belied by the fact that JCHD employees regularly dealt with similar pictures as part of their job duties. However, "a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, so long as the reason is one that might motivate a reasonable employer." See Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001) (internal quotation and marks omitted). Indeed, "[f]ederal courts do not sit to second-guess the business judgment of employers." See Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997).

Although Clark also speculated that she established an inference of retaliation from O'Cain's repeated disparaging remarks about her, she failed to counter assertions by O'Cain or Dr. Williamson that O'Cain did not directly

23

supervise Clark. "Mere conclusory allegations and assertions will not suffice" to establish pretext. See Earley v. Champion Intern. Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (citation omitted). Moreover, the record shows that the state did not suspend and terminate Clark's employment until after (1) it conducted a due process hearing; and (2) a hearing officer issued a detailed written report, outlining why these recommended employment actions were necessary. (See R1-64 at Exhs. 13, 19, 20). Thus, even if the district court erred in concluding that Clark failed to establish a prima facie case of retaliation, Clark failed to show that a genuine issue of material fact existed as to pretext. The court, therefore, did not err in granting the state summary judgment on Clark's Title VII retaliation claim.

**Issue 2:     Section 1983 Equal-Protection Claim**

Clark also argues that the district court erred in granting Eakins summary judgment on her § 1983 equal-protection claim. Clark contends that she showed a violation of a clearly established constitutional right through testimony that she was assaulted in retaliation against her testifying in the prior litigation, which was speech protected by the First Amendment. Clark also argues that the court erred in determining that her request for injunctive relief was moot because (1) she presented evidence of consistent past discrimination; and (2) because she was seeking reinstatement to her former position and likely would need job

24

recommendations in the future, there was a reasonable probability of further noncompliance with the law.

"A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004). "Qualified immunity protects government officials performing discretionary functions from liability if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Snider v. Jefferson State Community College, 344 F.3d 1325, 1327 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002)). "The burden rests on the plaintiff to show that qualified immunity is not appropriate." Snider, 344 F.3d at 1327.

We have concluded that, "[t]he right to be free from retaliation is clearly established as a first amendment right and as a statutory right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation." Ratliff v. DeKalb County, Ga., 62 F.3d 338, 340 (11th Cir. 1995) (emphasis in original). Because the plaintiff in Ratliff only alleged an equal-protection claim of retaliation under § 1983, we reversed the district court's denial of qualified immunity as to that claim. Id. at 341. Similarly, because Clark only

asserted in her amended complaint an equal-protection claim under § 1983, the district court did not err in concluding that Clark failed to allege a "clearly established statutory or constitutional right" and that qualified immunity was warranted, see Ratliff, 62 F.3d at 340.[7]

Moreover, even if Clark had alleged a First Amendment claim of retaliation, to successfully state such a claim, "a public employee must show that her employer retaliated against her because of her speech on a matter of public concern." Stavropoulos, 361 F.3d at 618. A public employer retaliates when he takes an adverse employment action that is likely to chill the exercise of constitutionally protected speech. Id. To be considered an adverse employment action in a First Amendment retaliation case, the challenged act "must involve an important condition of employment," which includes such acts as discharges, demotions, refusals to hire or promote, and reprimands. Id. at 619. Because Clark failed to explain why Eakins's alleged grabbing and restraining her "involved an important condition of employment," she also would not have been able to establish a First Amendment claim of retaliation. Thus, this district court also did not err in granting Eakins summary judgment on Clark's § 1983 claim.

---

[7] Although Eakins did not appear to argue in the district court the defense of mixed motives, this Court should note that, in both Title VII and § 1983 retaliation claims, "an employer can avoid liability if it can prove it would have made the same described employment decision in the absence of the alleged bias." See Pennington, 261 F.3d 1269.

26

Finally, to the extent Clark is challenging the court's determination that her request for injunctive relief was moot, we review the question of mootness <u>de novo</u>, <u>Coral Springs Street Systems, Inc. v. City of Sunrise</u>, 371 F.3d 1320, 1328 (11th Cir. 2004). "Standing has three constitutional elements. A plaintiff seeking to invoke a federal court's jurisdiction must show: (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Koziara v. City of Casselberry</u>, 392 F.3d 1302, 1304 (11th Cir. 2004) (citation omitted). Moreover, a plaintiff seeking injunctive or declaratory relief must prove not only an injury, but also "a real and immediate threat of future injury in order to satisfy the injury in fact requirement." <u>Id.</u> at 1305. Thus, a plaintiff seeking prospective relief "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." <u>Id.</u> at 1305-06 (concluding that plaintiff failed to assert, much less show, that a real and immediate threat of future injury).

As discussed above, Clark is asserting that a "real and immediate threat of future injury" exists because she wishes to be reinstated to her former position and may need future job recommendations. To the extent Clark did not waive these

27

arguments by failing to argue them in the district court, see Stavropoulos, 361 F.3d at 616 n.6, she has failed to show how these concerns related to her § 1983 equal-protection claim. Furthermore, the parties conceded in their joint status report that, after 2002, Eakins no longer served as Clark's supervisor. Thus, similar to the plaintiff in Koziara, Clark failed to show "a sufficient likelihood that [s]he [would] be affected by the allegedly unlawful conduct in the future,"and the court did not err in concluding that Clark's request for injunctive relief was moot. See Koziara, 392 F.3d at 1305-06.

Accordingly, we conclude that the district court did not err in granting the defendants summary judgment on Clark's Title VII and § 1983 retaliation claims. We, therefore, affirm.

**AFFIRMED**.