**Steven VANDESANDE, Plaintiff,**

v.

**MIAMI–DADE COUNTY, Defendant.**

**No. 0520479CV–O'SULLIVAN.**

United States District Court, S.D. Florida.

April 7, 2006.

Lawrence Joseph McGuinness, Joseph Lawrence McGuinness, Miami, FL, for Steven Vandesande, plaintiff.

William X. Candela, Dade County Attorney's Office, Miami, FL, for Miami–Dade County, defendant.

## ORDER

O'SULLIVAN, United States Magistrate Judge.

THIS MATTER comes before the Court on the Defendant's Motion for Summary Judgment (DE # 52, 2/1/06). Having reviewed the parties' filings, heard oral argument in the matter, and having carefully considered the applicable law, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Summary Judgment (DE # 52, 2/1/06) is **GRANTED** as set forth below.

## INTRODUCTION

### A. Materials Facts

The plaintiff, Steven Vandesande ("Mr.Vandesande"), is with the Miami–Dade Fire and Rescue Department ("the Fire Department").[1] The Fire Department hired Mr. Vandesande as a firefighter in May 2001. He is a member of the International Association of Firefighters Local 1403 ("the Union"), which is party to a collective bargaining agreement with the defendant, Miami–Dade County ("the County").

The County is a political subdivision of the State of Florida. The Fire Department is a department of the County responsible for fire and rescue services. The Air Rescue Division ("Air Rescue") is a bureau within the Fire Department's Special Operations section, which is responsible for providing *inter alia* emergency helicopter services. Air Rescue has two facilities, Air Rescue North and Air Rescue South.

### Vandesande Attends Fire Academy and is Assigned to Battalion 5–C

On July 6, 2001, Vandesande attended the Fire Department's Fire Academy. On August 19, 2001, Vandesande complained to Fire Department supervisors that he had been subjected to sexual harassment by an instructor and also that he was owed overtime pay under the Fair Labor Standards Act ("FLSA"). At some point during 2002, Vandesande filed a complaint with the Department of Labor ("DOL") concerning his overtime pay claim for his attendance at the Fire Academy.

Vandesande graduated from the Fire Academy on December 24, 2001 and began a one year probationary period as a firefighter. On December 9, 2002 Vandesande passed probation and was assigned to Battalion 5–C in North Miami–Dade, close to Vandesande's place of residence.

### A Pilot Vacancy Results In Vandesande's Union Grievance

On February 28, 2003, Pilot Robert Speakman retired creating a helicopter pilot and/or co-pilot vacancy at Air Rescue. On May 19, 2003, the County's Employee Relations Department ("ERD") published an announcement for Fire Department Helicopter Pilot recruitment.

On January 22, 2002, following completion of the Fire Academy, Mr. Vandesande submitted a memorandum of interest or preliminary letter of intent regarding future pilot positions.

On September 17, 2003, the Union filed a class action grievance prepared by Mr. Vandesande alleging that the Fire Department failed to advertise and select the senior qualified Fire Department employee

---

1. The facts of the case are set forth with a view toward the evidence and the factual inferences therefrom in the light most favorable to the plaintiff. *Key West Harbour Dev. Corp. v. Key West,* 987 F.2d 723, 726 (11th Cir.1993)

from within the department for transfer or reclassification to Fire Department Aircraft Commander and Fire department Helicopter Pilot. The grievance also alleged that Fire Department Helicopter Pilots James Hunter and Joseph Rivers were qualified but denied access to bid for Aircraft Commander (Pilot). Finally, the class action grievance states that there were intentional efforts to deny Mr. Vandesande access to vacancies at Air Rescue in retaliation for past involvement in protected activity including a DOL wage complaint and related Title VII complaint.

On February 27, 2004, ERD sent a request to the American Arbitration Association requesting a list of arbitrators in order to select an arbitrator for the class action grievance.

### Mr. Vandesande Files Charges with FCHR

On June 1, 2004, Mr. Vandesande filed a charge of sex, age and retaliation discrimination with the Florida Commission on Human Relations ("FCHR").

### Mr. Vandesande Complains About Retaliation to CFO Brooks

On July 19, 2004, Mr. Vandesande sent a written complaint to Chief David Brooks, the officer in charge of Air Rescue, that unspecified members of Air Rescue had "made explicit and clear threats against my transfer and tenure at Air Rescue, in direct response or retaliation to my grievance activity . . . ." (DE # 54, 2/1/06), attachment 11 at p. 2.

### Mr. Vandesande's Training in Texas is Delayed

Upon reading Mr. Vandesande's July 19, 2004 complaint regarding threats against him by unspecified members of Air Rescue, Chief Brooks denied Mr. Vandesande permission to attend immediate training in

Texas at the Bell Safety Center and sent him to training in November 2004 instead. Chief Brooks informed Mr. Vandesande that his July training was being rescheduled because of his "complaint."

### Union and Fire Department Settle Grievance; Mr. Vandesande is Promoted

On September 30, 2004, the Union and the Fire Department entered into a settlement agreement that provided for Mr. Vandesande's promotion to Helicopter Pilot and for an award of salary and benefits due him retroactively amounting to over $41,000.

### Internal Affairs Investigates Mr. Vandesande's Residency

County Ordinance 99–28 mandates that employees hired after 1998 must reside in Miami–Dade County.[2] Sometime between September and November 2003, the Fire Department's Internal Affairs division investigated Mr. Vandesande's residency to confirm that he did in fact live in Miami–Dade County. Mr. Vandesande was not disciplined or docked pay following this investigation.

### Chief Plummer Receives a Letter from DOL

On April 15, 2003, Fire Chief Lindsey Plummer received a letter from the Wage and Hour Division, Employment Standards Administration of the Department of Labor concluding that the Fire Department violated the Fair Labor Standards Act by failing to pay all employees at least the applicable minimum wage for all hours worked and by failing to pay statutory overtime pay to all employees for hours worked in excess of forty hours per week. These violations included those alleged by Mr. Vandesande.

---

**2.** The residency ordinance was amended in 2004 to exempt all law enforcement officers, including Fire Department sworn personnel.

### FCHR Issues a "No Cause" Determination

On October 15, 2004, FCHR issued a "No Cause" finding as to Mr. Vandesande's June 1, 2004 complaint. Mr. Vandesande did not file an administrative charge, request a hearing or otherwise appeal the FCHR's finding.

### Commander Smiley Issues Two Counseling Memoranda

On December 15, 2004, Commander Smiley issued Mr. Vandesande a memorandum counseling him for excessive use of his cell phone during training. The next day, December 16, Commander Smiley issued a second memorandum concerning Mr. Vandesande's unwillingness to sign a form related to his Record of Training and other aspects of his behavior. Commander Smiley also moved Mr. Vandesande from his assignment at Opa–Locka Air Rescue North to Air Rescue South Kendall–Tamiami and isolated Mr. Vandesande from other pilots in an empty classroom.

### Chief Barreto Assigns Mr. Vandesande to Vacancies In South Dade

In December 2004, Chief Ray Barreto was assigned Division Chief of the Special Operations Division, which oversees Air Rescue.

On December 17, 2004, Mr. Vandesande sent Chief Brooks at Air Rescue an e-mail complaining of a hostile work environment. Mr. Vandesande claimed that, from October 2003 up until that time, the Fire Rescue Department and its employees had been engaged in harassment and retaliation against him and that he was pursuing a constructive discharge claim. He also indicated intent to use his entire leave balance until exhaustion in order to avoid the hostile work environment.

Chief Barreto reviewed the hostile work environment claim submitted to Chief Brooks and consulted with Pepe Fernandez, the Fire Department's Human Resources Coordinator as well as Mr. Vandesande. Based on Mr. Vandesande's complaint and those consultations, in late December 2004, Chief Barreto reassigned Mr. Vandesande to a vacancy in Division 3, which is located in southern Miami–Dade County next to the South Dade Government Center. In filling the vacancy, Mr. Vandesande would be performing certain labor functions, such as stocking and conducting an inventory of heavy equipment.

### Mr. Vandesande Takes Leave And Is Reassigned Upon Return

Mr. Vandesande took the balance of his annual and sick leave from December 2004 through June 2005 following the events. In June 2005, after exhausting his leave, Mr. Vandesande returned to work and was assigned to fill a vacancy for the Urban Search and Rescue (USAR) Team located in Homestead, a significant further distance from Mr. Vandesande's residence than his previous assignments. The vacancy also required Mr. Vandesande to perform labor functions related to stock and inventory. During this entire period, from December 2004 through June 2005, Mr. Vandesande was not stripped of his co-pilot title, salary or benefits.

### OFEP Issues a No Cause Finding

On October 11, 2005, the County's Office of Fair Employment Practices ("OFEP") issued its report concerning Vandesande's retaliation discrimination complaint, which found no probable cause to believe that Mr. Vandesande suffered retaliation and/or a hostile work environment based on his membership in a protected category.

### Mr. Vandesande Is Reassigned to Air Rescue at the Tamiami Airport

In November 2005, Chief Barreto directed Mr. Vandesande to report to Helicopter co-pilot duty at Air Rescue. Mr. Vandesande is a helicopter co-pilot on B shift, Air Rescue South, Tamiami Airport.

## B. Procedural History

The defendant filed the instant Motion for Summary Judgment on February 1, 2006. The plaintiff filed a response in opposition to the motion on March 14, 2006 (DE # 65) and the defendant filed a reply on March 16, 2006 (DE # 69). The defendant also filed a request for oral argument concerning the motion (DE # 67, 3/14/06) and the Court heard argument from the parties on Thursday March 16, 2006 in conjunction with the final pretrial conference in the case. The motion is ripe for adjudication.

## ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A factual dispute is genuine is the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Id.* at 247, 106 S.Ct. 2505.

In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement as to require submission to a jury or whether it is so one-sided that the defendant should prevail as a matter of law." *Id.* at 243, 106 S.Ct. 2505. The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the evidence and factual inferences in the light most favorable to the non-movant. *Key West Harbour Dev. Corp. v. Key West,* 987 F.2d 723, 726 (11th Cir.1993).

Once the party moving for summary judgment has met its initial burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial so as to preclude summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence put forth by the non-movant cannot consist of conclusory allegations, legal conclusions or evidence that would be inadmissible at trial. *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991). Moreover, the non-movant must come forward with more than a "mere scintilla of evidence." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). In order to be sufficient, the evidence must be such that a jury could reasonably find for the non-movant. *Id.* (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505). The failure to make a showing sufficient to establish the existence of any essential element of a claim is fatal. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. The FCRA Retaliation Claim

The defendant argues that summary judgment in its favor on Count II of the plaintiff's complaint is appropriate because the plaintiff failed to comply with Florida law in pursuing an administrative appeal of the retaliation claim he brought pursuant to the Florida Civil Rights Act. The plaintiff failed to address the defendant's argument in his memorandum in opposition to the motion for summary judgment.[3] Hav-

---

**3.** When asked at oral argument whether the plaintiff was abandoning the FCRA retaliation

claim that he had not defended in his opposi-

ing reviewed the defendant's argument and the applicable law, the Court finds that summary judgment should be **GRANTED** as to Count II.

> Section 760.11(7) of the Florida Civil Rights Act ("FCRA") provides if the [FCHR] determines that there is not reasonable cause to believe that a violation has occurred, the commission shall dismiss the complaint. The aggrieved person may request an administrative hearing under § 120.569 and 120.57 ... within 35 days ....

■ In other words, when the FCHR issues a "No Cause" determination on a discrimination claim, the complainant is required to follow the administrative procedures set forth under Florida law. The failure to follow Florida's administrative procedures and to request an administrative hearing within 35 days of a No Cause determination bars the complainant from bringing a civil suit for retaliation under the FCRA. *Woodham v. Blue Cross and Blue Shield of Florida, Inc.*, 829 So.2d 891, 894–95 (Fla.2002).

In this case, it is undisputed that the plaintiff filed a discrimination complaint with the Florida Commission on Human Relations ("FCHR") on June 1, 2004 and that the FCHR issued a "No Cause" determination on October 15, 2004 (which was within 180 days of his complaint as required by Florida law). It is further undisputed that the plaintiff did not request an administrative hearing within 35 days of the No Cause determination. Therefore, the plaintiff's FCRA retaliation claim is barred. Summary judgment in favor of the defendant and against the plaintiff is GRANTED with respect to Count II of the plaintiff's complaint.

### C. The FLSA Retaliation Claim

Under the Fair Labor Standards Act ("FLSA"), it is unlawful "to discharge or in any manner discriminate against any employee because such employee has filed any complaint ... under or related to this chapter." 29 U.S.C. § 215(c)(3). An FLSA complaint would include the Department of Labor wage and hour complaint filed by the plaintiff in 2001. Count I of the plaintiff's complaint alleges that the defendant engaged in unlawful retaliation. Specifically, the plaintiff complains that the defendant retaliated against him by:

- failing to offer or to promote him to helicopter pilot in Spring 2003;
- delaying his pilot training from July 2004 to November 2004;
- commencing an internal investigation in the fall of 2002 regarding whether he was a resident of Miami–Dade County;
- issuing memoranda concerning his behavior as well as transferring him from Air Rescue North to Air Rescue South and isolating him; and
- transferring him from Air Rescue to Division 3 near the South Dade Government Center in December of 2004 and to Urban Search and Rescue in Homestead in June of 2005.

■ FLSA retaliation cases are analyzed according to the burden-shifting analysis employed by the courts in cases brought pursuant to Title VII of the Civil Rights Act. *See e.g., Wolf v. Coca–Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir.2000). To make a prima facie case for retaliation under the FLSA, the plaintiff must show: 1) that he engaged in an activity protected by the FLSA that was known to his employer; 2) that he suffered an adverse

---

tion, the plaintiff asserted vaguely that he was not abandoning the claim and offered, as a rationale for failure to follow the Florida pro-

cedures, that the complaint was of an ongoing nature.

employment action, and 3) that there is a causal connection between his participation in the statutorily-protected activity and the adverse employment action. *Id.* Under the burden-shifting approach, once the plaintiff has made out a prima facie case of retaliation, the defendant must come forward with "legitimate reasons for the employment action to negate the inference of retaliation." *Taylor v. Runyon,* 175 F.3d 861, 868 (11th Cir.1999)(quoting *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993)). If the defendant demonstrates a non-discriminatory reason for the adverse employment action, the presumption of discrimination arising from the prima facie case is eliminated. At this point, the burden shifts back to the plaintiff to produce evidence "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997). If the plaintiff fails to proffer evidence sufficient to create a genuine issue of material fact concerning whether the defendant's articulated reasons for the adverse employment action are pretextual, then the employer is entitled to summary judgment on the retaliation claim. *Id.*

● The Plaintiff Does Not Make A Prima Facie Case of Retaliation.

Turning to the first part of the burden shifting inquiry, that is, whether the plaintiff has made out a prima facie case of retaliation under the FLSA, the defendant argues that the plaintiff did not suffer an adverse employment action with respect to certain of his complaints: the delay in this his pilot training, the investigation of his residency status, the memoranda to his file prepared by Commander Smiley in De-

cember 2004, or his temporary assignments to Division 3 and USAR in Southern Miami–Dade County pending investigation of his hostile work environment claim.[4]

a. Adverse Employment Actions

■ "Adverse employment action" does not refer only to ultimate employment decisions, such as the decision to discharge an employee. *Shannon v. Bellsouth Telecomm., Inc.,* 292 F.3d 712, 716 (11th Cir.2002)(citing *Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir.1998)). Employer conduct falling short of an ultimate employment decision may still be cognizable under Title VII if it reaches "some threshold level of substantiality." *Id.* An adverse employment action occurs when there is a serious and material change in the terms, conditions or privileges of employment. *Davis v. Town of Lake Park,* 245 F.3d 1232, 1239 (11th Cir.2001). "Not everything that makes an employee unhappy is an actionable adverse employment action." *Shannon,* 292 F.3d at 716. The relevant inquiry is whether a reasonable person would view the employment action in question as adverse. *Doe v. Dekalb,* 145 F.3d 1441, 1448–49 (11th Cir. 1998).

1) Delay in Pilot Training

The plaintiff claims that, because of his 2002 DOL wage complaint, Chief Brooks of Air Rescue did not send him to Bell Helicopter Simulator training in Texas in July of 2004. The plaintiff concedes that he was sent to Texas for helicopter training in November 2004 but asserts, without any support, that the training was different from that offered in July.

4. The defendant also argues that, assuming these were adverse employment actions, the plaintiff cannot establish causation.

■ The Court finds that the delay in training from July to November 2004 does not constitute an adverse employment action and therefore cannot support a prima facie case of retaliation. *See Gonzalez v. Florida Dept. of Highway Safety and Motor Vehicles*, 237 F.Supp.2d 1338, 1368 (S.D.Fla.2002)(finding that denial of admission to training program was not a "serious and material" change in the terms, conditions, or privileges of employment); *see also Miller v. City of Coral Gables*, 2000 WL 33231604 at *7 (S.D.Fla.2000)(finding that failure or delay in training is not an adverse employment action).

2) Investigation of Residency Status

■ The plaintiff also contends that the investigation of his residency status was an adverse employment action in retaliation for his 2002 DOL complaint. The Court disagrees. An internal investigation is not an adverse employment action when it does not result in a significant change in employment status, such as termination, demotion, failure to promote, significant reassignment or a significant change in benefits. *Mitchom v. Bi-State Dev. Agency*, 43 Fed.Appx. 958, 959-60 (7th Cir.2002)(internal investigation of complaint against employee bus driver for allegedly interrupting funeral procession while driving did not amount to adverse employment action). In this case, it is undisputed that the internal investigation resulted in absolutely no change to the plaintiff's employment status.

3) Smiley Memos, Transfer, Classroom Assignment

The plaintiff argues that the memos issued by Commander Smiley were also adverse employment actions in retaliation for his 2002 wage complaint. The memos in question were addressed directly to Mr. Vandesande from Commander Smiley. They dealt with the issues of Mr. Vande-sande's cell phone usage during training and other aspects of his behavior that were allegedly bordering on insubordination.

■ The Eleventh Circuit has held that memoranda, such as those complained of by the plaintiff, "which did not cause him any present or foreseeable future economic injury," do not constitute adverse employment actions. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1240 (11th Cir.2001). To the extent that the plaintiff contends that the memos were unwarranted, diminish his reputation or might someday interfere with future job prospects, such concerns still do not amount to a serious and material change in the terms, conditions, or privileges of employment. *See id.* at 1239-40; *see also Collins v. Miami-Dade County*, 361 F.Supp.2d 1362, 1370 (S.D.Fla.2005).

In addition, neither the defendant's transfer of the plaintiff from Air Rescue North to Air Rescue South nor his assignment to a classroom away from other pilots amounts to an adverse employment action. Further, there is nothing in the record to suggest that his assignment to an empty classroom was of significant duration, was reported to his supervisors or affected his employment in any material fashion. In sum, neither this transfer nor his assignment to the classroom meets the threshold of substantiality required to amount to a serious and material change in the conditions of his employment. *See Davis*, 245 F.3d at 1239.

b. Causal Connection Between Adverse Employment Action and Plaintiff's Protected Activity

Because the record before the Court demonstrates that the plaintiff cannot prove the requisite causation, the Court assumes, without deciding, that, with respect to two of the plaintiff's claims—the failure to advertise and offer a promotion to him as well as his reassignments first to

Division 3 in South Miami–Dade and then to USAR in Homestead following his complaint of a hostile work environment—the first two elements of a prima facie case are satisfied. The Court assumes that the plaintiff's activity was protected by the FLSA and that the failure to offer the helicopter promotion/immediately promote the plaintiff and that his reassignments in 2004 and 2005 were adverse employment actions.

■ To establish causation between the statutorily-protected activity and an adverse employment action, the plaintiff must show that " the decision-makers [were] aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 590 (11th Cir.2000)(internal quotations omitted). The plaintiff must demonstrate, at a minimum, that the person taking the adverse action was actually aware of the protected activity at the time the adverse employment action was taken. *See Raney v. Vinson Guard Service, Inc.,* 120 F.3d 1192, 1196–98 (11th Cir.1997). The plaintiff can make this showing either by direct or circumstantial evidence. *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1266 (11th Cir. 1999).

Here, the plaintiff must show that the relevant decision-makers were aware of his DOL complaint and that the failure to promote the plaintiff and his reassignment were not wholly unrelated to the DOL complaint.

1) Direct Evidence

Where the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence. *Clark v. Alabama,* 141 Fed.Appx. 777, 785 (11th Cir.2005)(quoting *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189

(11th Cir.1997)(internal quotations omitted)). Direct evidence of retaliation is evidence, which if believed, proves the existence of a fact in issue without inference or presumption. *Id.* Evidence that only suggests discrimination or that is subject to more than one interpretation, does not constitute direct evidence. *Id.* (citing *Merritt,* 120 F.3d at 1189), and *Wilson v. B/E/ Aerospace, Inc.,* 376 F.3d 1079, 1086 (11th Cir.2004)). Under Eleventh Circuit precedent, " 'only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor' " constitute direct evidence. *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1266 (11th Cir.1999).

As an initial matter, the Court notes that in his own affidavit, the plaintiff offers a variety of retaliatory statements allegedly made by the plaintiff's various supervisors, which he apparently contends provide the Court with direct evidence of retaliation. However, the plaintiff did not provide the court with affidavits and/or deposition testimony of any of these persons. Therefore, the statements are hearsay and will not be considered by the Court. *Williams v. Housing Authority,* 709 F.Supp. 1554, 1562 (M.D.Fla.1988)("the court cannot base direct-evidence analysis on hearsay testimony by plaintiff...").

The only admissible direct evidence upon which the plaintiff relies goes toward the plaintiff's reassignment. It is Chief Barreto's statement that he was removing the plaintiff from Air Rescue for filing a "complaint." The plaintiff was questioned about Chief Barreto's statement during his deposition. The plaintiff contends that the word "complaint" refers to his 2002 DOL complaint. The defendant admits that Chief Barreto made the remark but contends, citing the plaintiff's own deposition testimony, that the word "complaint" refers to the plaintiff's December 17, 2004 hostile work environment claim.

■ Having reviewed the applicable law and the statement proffered by the plaintiff as direct evidence of retaliation, the Court finds Chief Barreto's statement insufficient to make a prima facie case of discrimination. Chief Barreto's statement is ambiguous both as to whether he had actual knowledge of the 2002 DOL wage complaint and as to whether his transfer of the plaintiff was motivated by the plaintiff's 2002 DOL complaint. Chief Barreto's statement is subject to more than one interpretation and does not constitute direct evidence of retaliation. *Merritt v. Dillard Paper Co.,* 120 F.3d at 1189.

The plaintiff has failed to present to the Court to any direct evidence that his reassignments, first in December 2004 and then in June 2005, were "not wholly unrelated" to his 2002 DOL complaint. Thus, the plaintiff cannot make out a prima facie case of retaliation and the defendant is entitled to summary judgment with respect to this claim.

### 2) Circumstantial Evidence

■ Under Eleventh Circuit precedent, a plaintiff satisfies the causation element by providing sufficient evidence that the decision-maker had knowledge of the protected activity and that there was a close temporal proximity between this awareness and the adverse action. *Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir.2004). "If there is a substantial delay between the protected expression and the adverse action[,] in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Id.* at 1220–21.

#### (i) Temporal Gap As Calculated From 2002 DOL Complaint

■ The Eleventh Circuit has found a temporal gap as small as three months to be insufficiently close to make out a prima facie case of retaliation. *Higdon,* 393 F.3d at 1220. Turning first to the plaintiff's reassignments to Division 3 in December 2004 and to USAR in Homestead in June 2005,[5] the reassignment occurred approximately 24 to 30 months after making his complaint to the Department of Labor. Thus, the temporal gap between the plaintiff's actual DOL complaint and his reassignment is far too lengthy to satisfy the causation element of a retaliation claim.[6]

With respect to the County's alleged failure to advertise and promote from within during early 2003, on December 9, 2002 the plaintiff passed probation and was assigned to Battalion 5–C. On February 28, 2003, Pilot Robert Speakman retired, which created a Helicopter Pilot vacancy

---

5. It is undisputed that the plaintiff's DOL complaint was made in the year 2002; however, neither of the parties have clarified in which month of that year the complaint was made. In order to give the plaintiff the maximum benefit in terms of showing causation via temporal proximity, the Court assumes the complaint was made in December 2002.

6. In his opposition, the plaintiff also argued that the retaliation against him was ongoing over the entire time period of 2002–2005. This must be rejected. As the defendant points out in its reply brief, the plaintiff's argument is much like that of the plaintiff in a recent Eleventh Circuit case, *Clark v. Alabama,* 141 Fed.Appx. 777 (11th Cir.005) in which the Court found that proof of sporadic and isolated acts of alleged retaliation spread over several years does not remove from the plaintiff the burden of showing a reasonable temporal connection between the plaintiff's protected activity and the alleged retaliation. In this case, the gap between the plaintiff's DOL complaint and the other actions complained of by the plaintiff is: 1) approximately 9 to 11 months between the complaint and the initiation of the internal residency investigation and 2) approximately 24 months between the complaint and the Smiley memoranda of December 2004. Assuming, for the sake of argument, that these were adverse employment actions, neither is in such close proximity as to suggest retaliation under the law of this Circuit.

at Air Rescue. The plaintiff had already submitted a preliminary letter of interest in any vacancy in January 2002, prior to the expiration of his probationary period and well in advance of Mr. Speakman's retirement. The record is silent as to what may have transpired with respect to the vacancy during March and April of 2003. However, on May 19, 2003, the County Employee Relation's Department published an announcement for Fire Department Helicopter Pilot recruitment.

■ The first question the Court must resolve is on what date the alleged adverse employment action occurred—February 28, 2003 or May 19, 2003. The plaintiff provides no support, either in the law or in the record, and the Court can find none, for the proposition that the alleged adverse employment action occurred on February 28, 2003, the only date that would provide the close temporal proximity necessary to show causation via circumstantial evidence. On that date, no position had been offered or refused anyone. In contrast, May 19, 2003, the date of the County's recruitment announcement provides record evidence to demonstrate that the County did not offer the plaintiff a pilot position. The Court finds that May 19, 2003 is the appropriate date to consider but also finds that it is too far removed to from the time of the DOL complaint to demonstrate a causal connection between the plaintiff's protected activity and the adverse employment action.

### (ii) Temporal Gap As Calculated from April 2003 Letter to Chief Plummer

■ The plaintiff argues that the temporal gap should not be measured from the

time he made the complaint but rather from the time Chief Lindsey Plummer received a letter from DOL concerning the plaintiff's overtime complaint. While the defendant contends that the plaintiff cannot point to a case for this proposition, the Court finds that *Higdon v. Jackson,* 393 F.3d 1211 (11th Cir.2004), does support plaintiff's line of argument. *Higdon* indicates that the court's inquiry should focus on the temporal gap between the *"knowledge of"* the protected activity and the adverse employment action. *Id.* at 1220 (emphasis supplied) (citing *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)). It appears that, typically, a supervisor's knowledge of a plaintiff's protected activity comes at the time of the protected activity. In light of the possibility that the supervisor's awareness may not be contemporaneous with the protected activity, it is the supervisor's awareness that is relevant.

■ Chief Plummer received a letter regarding the plaintiff's wage and hour complaint from the Department of Labor on April 15, 2003. Even if the Court assumes that Chief Plummer was the decision-maker concerning the alleged retaliatory acts against the plaintiff,[7] the gap between his knowledge of the plaintiff's protected activity and the decision to delay his pilot training in July 2004 plaintiff is too long to satisfy the proximity demanded under Eleventh Circuit precedent as there was a gap of fourteen months between the letter to Chief Plummer and the delay of training.[8]

---

**7.** The defendant rightly points out that there is no evidence in the record that Chief Plummer decided to delay the plaintiff's training or that the relevant decision-maker, Chief Brooks, had any awareness of the April 15, 2003 letter to Chief Plummer.

**8.** The Court also notes that, with respect to the other events the plaintiff contends were adverse employment actions, the internal investigation began no earlier than September 2003, four to five months after the April 2003 letter and the Smiley memos concerning the plaintiff's performance were not written until

**1258**

Turning to the plaintiff's complaint regarding the County's failure to offer or to promote him to Helicopter Pilot in the spring of 2003, there appears to be a temporal gap of approximately four weeks between Chief Plummer's receipt of the letter and the County's recruitment announcement. Such proximity is sufficient to make a prima facie case of retaliation— if Chief Plummer is the relevant decision-maker or if there is evidence that, upon receiving the letter, he made the relevant decision-maker, presumably the County Employee Relations Department, aware of the letter. Here, the plaintiff has offered no evidence that Chief Plummer either was the decision-maker who determined that the defendant would not advertise the vacancy internally or make an immediate offer of promotion to the plaintiff. Nor is there any evidence in the record to suggest that Chief Plummer informed anyone at the Employee Relations Department, which published the recruitment announcement, of the existence of the letter. As such, the plaintiff has not made out a prima facie case of retaliation and summary judgment should be **GRANTED** as to Count I in favor of the defendant and against the plaintiff.

### CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (DE # 52, 2/1/06) is **GRANTED**. A final judgment will be issued separately.

December 2004, more than a year and a half    later.